Williams, J.
 

 Was there a final order in the Municipal Court of Cleveland?'
 

 It is established in this court that where a motion to direct a verdict is overruled and, after a verdict is returned for plaintiff, the trial court grants defendant’s motion for a new trial and overrules his motion for a
 
 *523
 
 judgment in Ms favor, the overruling of the defendant’s motion for judgment is a final order from which defendant, feeling aggrieved, may appeal to the Court of Appeals. See
 
 Hocking Valley Mining Co.
 
 v.
 
 Hunter, 130
 
 Ohio St., 333, 199 N. E., 184; and
 
 Cincinnati Goodwill Industries
 
 v.
 
 Neuerman,
 
 130 Ohio St., 334, 199 N. E., 178. In principle there is no difference when the jury disagrees and defendant’s motion for judgment is overruled. The overruling of the motion constitutes a final order, from which an appeal lies. Consequently, the Court of Appeals did not err in overruling the motion to dismiss the appeal.
 

 Did the Court of Appeals err in entering final judgment in favor of the defendant?
 

 The provision in each of the two policies, so far as pertinent, reads:
 

 “Upon receipt of due proof that insured * * * has sustained, after the date of this policy, bodily injuries, solely through external, violent and accidental means, resulting, directly and independently of all other causes in the death of the insured * * * the company will pay'"in addition to any other sums due under this policy and subject to the provisions of this policy an accidental death benefit equal to the face amount of insurance then payable at death # * *.
 

 “No accidental death benefit will be paid if the death of the insured is the result of self-destruction, whether sane or insane, nor if death is caused or contributed to, directly or indirectly, or wholly or partially, by disease, or by bodily or mental infirmity * *
 

 This court has passed upon the meaning of “accidental means” as used in similar policy provisions.
 
 Mitchell
 
 v.
 
 New York Life Ins. Co.,
 
 136 Ohio St., 551, 27 N. E. (2d), 243;
 
 Hassay
 
 v.
 
 Metropolitan Life Ins. Co.,
 
 140 Ohio St., 266, 43 N. E .(2d), 229. No difficulty arises from that source. There was competent evidence that the deceased fell and fractured his right
 
 *524
 
 femur near the hip joint on or about April 2, 1941, which evidence was not contradicted or disputed, and furthermore there is no question that this injury was a bodily injury sustained through external, violent and accidental means.
 

 The real problem presented by defendant’s motion for judgment in its favor relates purely to causation. Plaintiff claims that the bodily injuries were sustained solely through accidental means resulting directly and independently of all other causes in the death of the insured.' Defendant claims as a matter of law that death was caused or contributed to directly or indirectly or wholly or partially by disease or by bodily or mental infirmity. These conflicting claims raise the question of the proper construction of the applicable provision of the policies as to whether the infirmity must contribute proximately or need contribute only remotely in order to relieve the defendant from legal responsibility.
 

 In the case of
 
 Equitable Life Assurance Society of the United States
 
 v.
 
 Gratiot,
 
 45 Wyo., 1, 14 P. (2d), 438, 82 A. L. R., 1397, the court had under consideration an action for an additional amount upon an insurance policy which permitted double indemnity for death of the insured when the death “occurred in consequence of bodily injury effected solely through external, violent and accidental means” but providing further that it did not cover
 
 inter alia
 
 “death resulting directly or indirectly from bodily or mental infirmity.”
 

 In the opinion the court said:
 

 “Counsel’s claim that no recovery should be permitted herein would, doubtless, be valid, if it were conceded that any bodily infirmity which, from a scientific standpoint, contributes to the death, would have that effect under the terms of the contract, and that is virtually what counsel, upon ultimate analysis, insist on.
 
 *525
 
 They apparently overlook the difference between proximate cause on the one hand, and remote cause or a condition on the other, as recognized in law, not bearing in mind, seemingly, that a contributing cause from a scientific standpoint is not necessarily a proximately contributing cause from a legal standpoint. # * * The foregoing cases as a whole, or at least many of them, all dealing with policies similar to that in the case at bar, clearly show, we think, that, in solving the problem before us, we cannot overlook the distinction between proximate and remote cause, and that if a disease, bodily infirmity, or predisposing cause in fact existed, as claimed, still unless it can be said to be one of the proximate causes instead of only the remote cause or condition, recovery should not, on that account, be denied.”
 

 We must start with the principle that the disease or infirmity must contribute proximately to the death of the insured, to absolve the insurer from liability. This is in accord with the authority just quoted from and cases referred to therein with appoval.
 

 The plaintiff called as an expert a physician who had never seen the deceased. In response to a hypothetical question he testified upon the cause of the death as follows:
 

 “Q. Now, Doctor, assume that a man about 62 years of age fell on the second day of April, 1941, and sustained by reason of that fall an intra-trochanteric fracture and assume too that he died two days later on the fourth of April, 1941, do you have any opinion as to the cause of his death? * *
 
 *
 
 A. Yes, I have.
 

 “Q. Will you state that opinion, Doctor? * * * A. In my opinion, the man died as a result of the fracture, the injury sustained at the time of his fracture.”
 

 In explaining his opinion the doctor stated that he assumed that the deceased was well when he fell and
 
 *526
 
 that one who suffers such fracture is likely to develop pneumonia or an embolism as a result of the fall.
 

 No other evidence was adduced by plaintiff tending to show that the fracture caused decedent’s death.
 

 The defendant called only one witness, a physician who attended the insured from time to time during the yeqr before the latter’s death. From the testimony of this witness it appears that the decedent during that time was an inmate in the Cleveland State Hospital and that about six weeks before his death was transferred to the infirmary of that institution. The physician saw the insured about once a week during his stay in the infirmary and examined him the “last day or two of his life.” The physician testified that the insured suffered from arteriosclerosis in an advanced stage; that he had mentally deteriorated, had poor judgment and was refractive; that he was unsteady on his feet, had frequent dizzy spells and fell; that the cause of death was “primarily cerebral arteriosclerosis;” and that had it not been for “the arteriosclerosis and other conditions existing more than two days previous to his death, ’ ’ the insured would not have died.
 

 The plaintiff did not offer any evidence in rebuttal. Under those circumstances the testimony of plaintiff’s medical expert, who never saw the insured and assumed him to be in good health, is not inconsistent with the testimony of the defendant’s expert who in giving his opinion took into consideration the arteriosclerosis and accompanying ailments of which he had personal knowledge. Thus all the evidence as to the cause of death may be reconciled and the presumption of good health, which is merely a presumption of law, is overcome by positive proof. The theory of plaintiff’s medical expert was that a’well man, who suffered a fracture of the hip and died about two days therafter, died from pneumonia or thrombosis superinduced by the frac
 
 *527
 
 ture. The medical expert called by the defendant took as his hypothesis known infirmities and drew the conclusion he did with respect to the cause of death. The theory of plaintiff’s expert fails because there is no evidence that insured was in good health at the time of his fatal fall. On the other hand the opinion of defendant’s expert, founded firmly as it was upon uncontroverted facts, remains unchallenged.
 

 The cause of death of the insured is in the last analysis a question of medical science. As the only expert medical testimony based on evidential facts, when the evidence is considered as a whole, is to the effect that the insured’s death was primarily caused by his infirmities and without their presence death would not have occurred, reasonable minds can reach but one conclusion, namely, that the arteriosclerosis and the accompanying ailments proximately contributed to produce the death. Therefore, as a matter of law, plaintiff was not entitled ,to recover and the Court of Appeals did not err in entering final judgment for the defendant.
 

 Judgment affirmed.
 

 Weygandt, C. J., Matthias, Hart, Zimmerman, Bell and Turner, JJ., concur.