## LEE v. NEW YORK LIFE INS. CO.

No. 5921. Decided September 3, 1938. (82 P. 2d 178.)

Rehearing denied November 14, 1938.

*Critchlow & Critchlow,* of Salt Lake City, for appellant.

*J. Wesley Horsley,* of Brigham, and *Gardner, Latimer & Evans,* of Salt Lake City, for respondent.

FOLLAND, Chief Justice.

Plaintiff is the widow of Eli F. Lee and beneficiary under a policy of insurance issued by defendant company on the life of Lee. Double indemnity was provided for death by accident independent of other causes. The company prompt-

ly paid the face of the policy but refused payment of the additional benefits on the ground that death was not caused solely by accidental means within the meaning of the policy. That is the only question before us.

The court submitted the cause to the jury with appropriate instructions. From a verdict and judgment for plaintiff, defendant appeals. All assigned errors go to the point that the court should have granted a nonsuit or directed a verdict for defendant, or, after verdict, granted a new trial. Our decision is that the court did not err in submitting the cause to the jury, and on a conflict of evidence the verdict cannot be overturned on appeal.

The policy recites that double the amount of the policy will be paid upon receipt of due proof that the death of the insured resulted "directly and independently of all other causes from bodily injury effected solely through external, violent and accidental causes, and that such death occurred within sixty days after sustaining such injury." It further states that the double indemnity benefit will not apply if death resulted from "physical or mental infirmity; or directly or indirectly from illness or disease of any kind." It is evident that if death of the insured resulted "directly and independently of all other causes from bodily injury effected solely through external, violent and accidental cause" then it could not have resulted from "physical or mental infirmity; or directly or indirectly from illness or disease of any kind."

Defendant contends that plaintiff's evidence alone discloses that disease was an indirect or contributing cause of death. Plaintiff's view is that on that subject there was evidence by plaintiff's witnesses to support the verdict.

Lee, a teacher in the Brigham City schools, during vacation accompanied his wife in an automobile with supplies to a girls' summer camp in Box Elder Canyon. A trailer, carrying the supplies, was attached to the auto. At the destination Lee unhooked the trailer and led it down the slope to the cabin. The slope and load accelerated the speed of the trailer

so that he was pushed against the side of the cabin, the tongue of the trailer hitting him on the right side of the abdomen. He fell to the ground and for a minute or two could not get up. He felt weak and nauseated. In about an hour he was well enough to walk around and shortly thereafter drove his car back home to Brigham City. At home he went to bed and called Dr. Pearce, who prescribed cold packs, gave opiates to relieve the pain, and instructed him to stay in bed. Dr. Pearce testified that Lee complained of pain over the right quadrant of the abdomen, and appeared to be in misery. The abdomen was tense. There was no bruise at that time. He kept the patient in bed most of the time for a week and with his stomach empty. At first there was a temperature of 101 degrees which gradually subsided to normal. After about a week, Lee could walk about and leave the house. About a month after the accident, Dr. Pearce made an examination finding a temperature of 100 degrees. The abdomen was tender in the lower part in the region of the appendix. Blood count showed acute inflammation. There was also pain in the upper region of the abdomen. Dr. Pearce operated for appendicitis. He found and removed an infected appendix. He opened the abdomen further and found an enlarged and diseased gall bladder which he removed. The gall bladder was enlarged to ten times its normal size, containing pus and a stone the size of a hickory nut. The gall bladder had been ruptured at a previous time. The extent of rupture is not entirely clear. Dr. Pearce testified at the time of the trial that the rupture was "clear through" the gall bladder, while in his report to the defendant company he stated that the "external covering of the gall bladder and the muscular coat were ruptured down to the internal mucous layer. There seemed to be no opening in the mucous layer."

Lee's condition was satisfactory for a few days, then turned worse and he was "out of his head." He died August 24th. Dr. Pearce testified as to the facts found on diagnosis and from the operation and gave as his opinion that Lee

died from the effect of the accidental blow to the abdomen on July 12th; that the blow ruptured the gall bladder; that the ruptured gall bladder brought about the infected condition of the appendix and made necessary the operation; that in his opinion the ruptured gall bladder was the sole cause of death.

There was, therefore, evidence for the jury, unless we can say as a matter of law that death was not solely caused by accident where the blow disturbed a diseased condition, the gall bladder, which in turn infected the appendix and brought on death.

It is not contended that the disease of the gall bladder was caused by the blow. There is evidence that Lee had been suffering from gall bladder trouble for sometime prior to the accident. Giving plaintiff's evidence full credence, the blow ruptured the gall bladder, causing the infection to spread and infect the appendix and thereby made necessary the operation and caused death. Medical experts produced by defendant testified to the contrary, but for the purpose of determining whether the court should have granted defendant's motions for nonsuit, directed verdict, or new trial, we must consider the evidence most favorably to plaintiff's case. The effect of the blow and the course of infection in the system, and its results, are matters upon which medical experts may advise the jury, and where experts disagree it is for the jury to decide.

The rule, as we believe it to be on the facts which the jury was justified in finding, is that where an accidental injury sets in motion or starts activity of a latent or dormant disease and such disease contributes to the death after having been so precipitated by the accident, the disease is not a direct or indirect cause of death, nor a contributing cause within the meaning of the terms of the policy, but the accident which started the mischief and precipitated the condition resulting in death is the sole cause of death.

It is quite apparent that if Dr. Pearce be believed, and the jury had a right to believe him, the diseased condition of the gall bladder was not actively progressing and it afforded no reason to believe that death might be imminent, but the blow from the accident caused the rupture of the gall bladder that in turn caused infection to spread and affect the appendix, which required an operation, with death resulting. Hence, if this chain of causation be true, the accident was the sole cause of death. Cases supporting this view are numerous. *Equitable Life Assurance Society of the United States* v. *Gratiot,* 45 Wyo. 1, 14 P. 2d 438, 82 A. L. R. 1397; *Jones* v. *General Accident, Fire & Life Assur. Corp.,* 118 Fla. 648, 159 So. 804; *Continental Casualty Co.* v. *Lloyd,* 165 Ind. 52, 73 N. E. 824; *United States Fidelity & Guaranty Co.* v. *Hood,* 124 Miss. 548, 87 So. 115, 15 A. L. R. 605; *Druhl* v. *Equitable Life Assur. Soc.,* 56 N. D. 517, 218 N. W. 220, 60 A. L. R. 962; *Kearney* v. *Washington Nat. Ins. Co.,* 184 Wash. 579, 52 P. 2d 903; *Inter-Ocean Casualty Co.* v. *Wilkins,* 96 Ind. App. 231, 182 N. E. 252; *Moon* v. *Order of United Commercial Travelers of America,* 96 Neb. 65, 146 N. W. 1037, 52 L. R. A., N. S., 1203, Ann. Cas. 1916B, 222; *Hill* v. *Great Northern Life Ins. Co.,* 186 Wash. 167, 57 P. 2d 405, 406. See, also, the list of cases cited in *Silverstein* v. *Metropolitan Life Ins. Co.,* 254 N. Y. 81, 171 N. E. 914; *Williams* v. *General Accident Fire & Life Assur. Corp.,* 144 Kan. 755, 62 P. 2d 856.

The result we reach is in harmony with our decision in *Browning* v. *Equitable Life Assur. Soc.,* 94 Utah 532, 72 P. 2d 1060, petition for rehearing denied, 94 Utah 570, 80 P. 2d 348, although the two cases are not identical. In the Browning Case many of the cases pertinent to different factual situations with identical or similar policy provisions are fully analyzed and discussed in the decision of the court and in the dissenting opinions. There is no need for us to repeat or further discuss the cases.

Judgment of the District Court of Box Elder County is affirmed with costs to respondent.

HANSON, MOFFAT, and LARSON, JJ., concur.

WOLFE, Justice (concurring).

I concur. I also agree that if there was an injury which was effected solely through external, violent and accidental means, which injury in turn directly and independently of all other causes produced the death of the insured, such death could not have been caused directly or indirectly from illness or disease of any kind. And, of course, the converse must be so, that is, that if the death was caused directly or indirectly from illness or disease of any kind, it could not have been caused directly by the injury independently of all other causes. And I think this must follow by every dictate of common sense and reasonable construction of language in spite of our decision in the case of *Browning* v. *Equitable Life Assur. Soc.*, 94 Utah 532, 72 P. 2d 1060, on petition for rehearing, 94 Utah 570, 80 P. 2d 348. In the Browning Case a sprain to the finger was caused by a fall. Every reasonable construction of the evidence required the finding that an infection or toxemia, not caused by the accident or injury and not set in motion by the accident, attacked the joint involved in the sprain and prolonged the incapacity long beyond the outside normal period of incapacity which would have been alone due to the sprain. Instead of the sprain being the cause, independently of all other causes, of the prolonged incapacity, the reverse was true; that is, that the infection or toxemia was the sole cause independently of all other causes of the prolongation of incapacity. Yet we held that the insurer was liable. I think such holding is without precedent in the United States. It seems difficult to conceive of any case where there may be any interaction of the results of an injury and the results of some other independent cause regardless of how paramount, efficient or concurring the other independent cause may be in producing the death or incapacity which, under that holding, would not be covered by the policy. The only case which would apparently not be covered by the policy would be where the

course of the chain leading from the injury and the course of the chain leading from the other cause, be it a disease, toxemia, infection or what not, were shown to be entirely separated without any interaction one with the other. Certainly, under the Browning Case, which I think is beyond the outside circle of liability arising from any reasonable construction of the policy, this case must be decided against the insurer.

I think, however, independently of the Browning Case, the judgment in this case should be affirmed. There is some evidence, thin as it may be, that the blow of the trailer tongue set in motion infection contained in the diseased gall bladder which in turn affected the appendix. If the diseased gall bladder was before the accident in a quiescent state where it was not affecting the system or affecting insignificantly, and the accident had started into the system the walled up infection, then I think the insurer would be liable, because then it could be said according to one line of cases that the injury directly and independently of all other causes caused the death even though the infection thus set up by the injury was the paramount, proximate reason for the death or incapacity. This is because the causes are linked together in series,—the accident causing the injury, the injury causing a diffusion of the infection, and the infection causing the appendicitis and the appendicitis causing death. This is not the Browning Case where the course of the injury was one thing which simply set the stage, whilst the toxemia, an independent, crusading agency, already there, not produced or set in motion by the injury, but simply using the injured part as a favorable spot for its operation, therefore operating not in series but in parallel, was the efficient, paramount and independent cause of the prolonged inability. I am aware that there is very respectable authority to the effect that even where the accident sets in motion a dormant pre-existing condition and that condition, rendered active, is itself the efficient concurring or paramount cause of the death or disability, that such must be considered a

cause independently of the accident. But I think the insurer takes the insured "as is" and if the accident by operating on that particular person actually set in motion causes which would not have been set in motion in a normal person but which produced the final result, it is a reasonable construction of the policy to hold that the accident was the direct and only cause of the final result.

This judgment, therefore, may be upheld independently of the holding in the Browning Case. For the reason that I am bound by the Browning Case as the law in this State, and because independently of it I think the judgment should be affirmed, I concur.