## TUCKER et al. v. NEW YORK LIFE INS. CO.

No. 6735.   Decided January 11, 1945.   (155 P. 2d 173.)

See 37 C. J., Life Insurance, sec. 318. 29 Am. Jur., 180.

*Critchlow & Critchlow,* of Salt Lake City, for appellant.

*Dey, Hoppaugh, Mark & Johnson,* of Salt Lake City, for respondents.

TURNER, Justice.

This is an appeal from a judgment entered upon a verdict of a jury in favor of plaintiffs and against the defendant. The action was brought upon a policy of insurance issued by the defendant upon the life of Garber M. Nichols, now deceased. The policy provided for the payment of a death benefit of $1,000, and in the event of accidental death, within the provisions of the policy, an additional $1,000. Garber M. Nichols died on the 7th day of December, 1941, while the policy was in full force and effect. The Insurance Company paid to plaintiffs as beneficiaries the face of the policy but refused to make payment for death caused by accident.

The provision of the policy with which we are concerned is as follows:

"New York Life Insurance Company agrees to pay to (the beneficiaries) $1,000.00, the face of this policy, upon receipt of due proof of the death of Garber M. Nichols, the insured; or double the face of this policy upon receipt of due proof that the death of the Insured resulted directly and independently of all other causes from bodily injury effected solely through external, violent and accidental cause, and that such death occurred within sixty days after sustaining such injury." "This double indemnity benefit will not apply if the Insured's death resulted from physical or mental infirmities; or directly or indirectly from illness or disease of any kind."

The plaintiffs allege in their complaint that the death of the insured was the result, directly and independently of all other causes, of bodily injury effected solely through external, violent and accidental means and that the insured's death occurred within sixty days after sustaining the injury, which occurred on the night of November 19, 1941, when the insured accidentally slipped on the icy pavement and fell, breaking his arm and causing a disecting aneurism of the aorta which caused his death on December 7, 1941.

Defendant in its answer admits the existence of the policy, the fact of death of the insured on the date stated, the receipt of due proof of the death, but denies that the death resulted directly and independently of all other causes from bodily injury effected through external, violent and accidental causes, and alleges that the double indemnity provision of the policy does not apply because the insured's death resulted directly or indirectly from illness or disease.

The case was tried upon this issue. There is little, if any, dispute over the facts in the record. The insured did accidentally slip and fall on the icy sidewalk on the night of November 19, 1941, and as a result sustained a fractured arm. He was assisted to his residence at the University Club in Salt Lake City, about a block away from the place of the fall. Dr. Ralph T. Richards, a member of the Salt Lake Clinic, was called. The insured had been a patient of Dr. Richards from early in November, 1940.

The following facts are taken from the record: Dr. Richards testified that he saw Mr. Nichols on the night of November 19, 1941. He looked very pale, much upset and complained of having considerable pain in his arm and back. After a few minutes, Mr. Nichols walked from the Club across the street to the Salt Lake Clinic where he was given a hypo of morphine and his arm was X-rayed and put in a temporary dressing. After this was done he went back across the street to the Club. The following day he went to the L. D. S. Hospital where he remained until his death on December 7, 1941.

Dr. Richards was called as a witness by plaintiffs. Dr. L. E. Viko was called as an expert for the defendant. These were the only witnesses called. The record is short and there is very little conflict in the evidence. The only material difference of opinion of the doctors is relevant to when they thought the break in the inner lining (intima) of the aorta occurred. Dr. Richards was of the opinion that the rupture came at the time the insured fell, while Dr. Viko was of the opinion that this happened on the day following the accident, when the insured reached from his bed in the hospital to get a match.

At the conclusion of the evidence, the case was submitted to the jury upon instructions. The jury returned a verdict in favor of plaintiffs. The Insurance Company, appellant herein, contends that the court erred in refusing to give its request No. 1, which reads as follows:

"The jury is instructed to return a verdict in favor of the defendant and against the plaintiffs, no cause of action,"

and also erred in the giving of certain other instructions and in its refusal to give other instructions as requested by the defendant Company.

We will purposely recite the testimony of the witnesses at length, for the questions of law which are presented on this appeal must be determined from the factual picture presented. And we have also purposely set forth appellant's request No. 1, for, when the factual picture is complete, the case may stand or fall because of the law governing the granting or refusal to give this request.

The law controlling the issues of this case has recently been laid down by this court. Whether the record justifies a conclusion affirming the judgment appealed from, or to the contrary, the rules of law controlling either situation have been announced with clarity and certainty. In *Browning* v. *Equitable Life Assurance Society*, 94 Utah 532, 72 P. 2d 1060, 1073, Mr. Justice Larson,

in construing the language of a similar insurance contract, wrote as follows:

"* * * the rule of strictissimi juris has been applied almost universally to insurance contracts, and this jurisdiction, like many others, has declared in favor of a liberal construction in favor of the insured to accomplish the purpose for which the insurance was taken out and for which the premium was paid. *Colovos* v. *Home Life Ins. Co. of New York*, 83 Utah 401, 28 P. 2d 607; *Gibson* v. *Equitable Life Assur. Society of United States*, 84 Utah 452, 453, 36 P. 2d 105. [Other cases are: *Handley* v. *Mutual Life Ins. Co. of New York*, 106 Utah 184, 147 P. 2d 319, 152 A. L. R. 1278, citing *Lewis* v. *Ocean Accid. & Guar. Corp.*, 224 N. Y. 18, 120 N. E. 56, 57, 7 A. L. R. 1129].

"The courts, in interpreting the clause in insurance policies like that here involved to wit: *An injury effected through violent, external, and accidental means, entirely independent of all other causes,* have made three distinctions or classes of cases: (1) When an accident causes a diseased condition which, together with the accident, results in the injury or death complained of, the accident alone is to be considered as the cause of the injury or death. *French* v. *Fidelity & Casualty Co.*, 135 Wis. 259, 115 N. W. 869, 17 L. R. A., N. S., 1011; *Cary* v. *Preferred Acc. Ins. Co. of New York*, 127 Wis. 67, 106 N. W. 1055, 5 L. R. A., N. S., 926, 115 Am. St. Rep. 997, 7 Ann. Cas. 484. (2) When, at the time of the accident, the insured was suffering from some disease, but the disease had no causal connection with the injury or death resulting from the accident, the accident is to be considered the sole cause. *Bohaker* v. *Travelers' Ins. Co.*, 215 Mass. 32, 102 N. E. 342, 344, 46 L. R. A., N. S., 543. (3) When at the time of the accident, *there was an existing disease* which, cooperating with the accident, resulted in the injury or death, the accident cannot be considered as the sole cause, or as the cause independent of all other causes. *Smith* v. *Federal Life Ins. Co.*, D. C., 6 F. 2d 283; *Cretney* v. *Woodmen Acc. Co.*, 196 Wis. 29, 219 N. W. 448, 62 A. L. R. 675; *Leland* v. *Order of United Commercial Travelers of America*, 233 Mass. 558, 124 N. E. 517, 520."

From the instructions given by the trial court in this case, we must conclude that the trial judge thought there was evidence in the record which necessitated a factual determination. The factual problem submitted to the jury for determination was whether the deceased died from the

effect of the accident, causing a diseased condition which resulted in death, or whether the deceased, at the time of the accident, had an existing disease which, co-operating with the accident, resulted in the insured's death. Naturally, if the evidence of the witnesses regarding the insured's physical condition at the time of the accident and for some time prior thereto was in conflict, the case had to be submitted to the jury.

We have made a complete and thorough examination of the record with this in mind, and call attention to the following testimony of Dr. Richards:

"Q. You were there when he died? A. Yes.

"Q. Were you able to diagnose his trouble before he died? * * * A. No, I did not know what caused the back pain, no, no definite diagnosis was made * * *.

"Q. And an autopsy was performed, Doctor. A. Yes * * *.

"Q. Following the autopsy, did you conclude what caused death? A. The conclusion of the pathologist was dissecting aneurism of the aorta."

It should be remembered that the conclusion of the pathologist is not disputed. After the preceding answers to questions put by counsel, Dr. Richards, in substance, said: The aorta is the largest artery of the body. It furnishes blood to all parts of the body except the lungs. Because of the breaks in the linings of the aorta, blood had gone into the chest cavity, working into the back part of the abdominal cavity.

In answer to a request for his opinion as to the cause of the breaking of the walls of the aorta, the doctor said:

"My opinion is the initial of this probably was due to increased pressure at the time of the accident."

On cross-examination, Dr. Richards testified that dissecting aorta aneurism is very unusual. He was asked:

"Q. Is there some disease that is almost universally present when a person dies of dissecting aorta aneurism? A. Yes, most of them

have a history of increased blood pressure and many of them, not all, show a degeneration of the middle coat of the aorta * * *.

"Q. Do you have an opinion, Doctor, as to how long these atherosclerosis changes had been present in Mr. Nichols? A. Of course, the accurate estimate of the age cannot be made, but inasmuch as he had been under observation in our office for over a year with increased blood pressure during that period I am justified in believing it had been developing during that period, and if he had had increased blood pressure prior to the first observation, it may have originated at an earlier date, I can't estimate the age.

"Q. But it is your opinion that it had been developing for a period of a year? A. It is a chronic condition and slowly advancing apparently."

Dr. Richards was questioned regarding the fractured arm of deceased:

"Q. In your opinion, Doctor, would the fracture, either of the fractures of the arm enter into death in any material way? A. No.

"Q. Then I take it, Doctor, that it is your opinion that Mr. Nichols did not have a healthy aorta? A. It is.

"Q. And that the aorta was damaged by disease? A. Yes.

"Q. And that your opinion is that the dissection which ultimately resulted in death was caused by an interaction of two factors—one, the diseased condition of the aorta, and, two, an increased blood pressure attending this fall. A. Yes.

"Q. And the diseased condition of the aorta, as I understand it, Doctor, had been progressing at least during the period when Mr. Nichols was under treatment there at the Clinic for a period of—A. About a year."

The record contains no testimony contrary to these facts and opinions given by Dr. Richards, who was called by plaintiffs and upon whose testimony their case must stand. The picture of the insured's physical condition could be enlarged and made even plainer by including other testimony given by both Dr. Richards and Dr. Viko. The record shows conclusively that there is no conflict in the evidence as to the material issues of this case.

That Mr. Nichols had been suffering from high blood pressure for at least a year prior to his fall must be accepted

as true. There is not any evidence to the contrary. He had been suffering from a known disease for a period of a year or longer. This condition or disease was, in the opinion of the doctors, not only active but progressive. Both doctors expressed the belief that the intima of the aorta gave way, and caused death, and that this was the result of the diseased condition which had so weakened this main artery that it could not stand the increased blood pressure occasioned by the fall, or the strain imposed upon the aorta after the injury.

In *Bates* v. *New York Life Ins. Co.*, D. C., 31 F. Supp. 813, 815, the court said:

> "The Court finds that an aneurism is a disease as a matter of law, and that a death from the rupture of an aneurism of the abdominal aorta is a death which results indirectly from bodily infirmity or disease."

Mr. Nichols' condition at the time of the accident was one in which he had an existing disease which co-operated with the accident in causing his death. This compels us to conclude that the accident cannot be considered the sole cause of insured's death, and from this factual picture, we must conclude that this case is one which falls within the third class of cases as set forth in Mr. Justice Larson's opinion in *Browning* v. *Equitable Life Assur. Society*, supra, and the cases there cited.

We also think the law announced in *Lee* v. *New York Life Ins. Co.*, 95 Utah 445, 82 P. 2d 178, supports our conclusion. In that case the facts were materially different. Lee previously had been ill from gall bladder trouble, but at the time of the accident this condition was not active, but dormant, and was completely walled off, and had not the injury directly disturbed this and caused it to become active, the condition which was dormant and walled off might never have contributed to the insured's death. See, also, *Sullivan* v. *Metropolitan Life Ins. Co.*, 96 Mont. 254, 29 P. 2d 1046; *Greber* v. *New York Life Ins. Co.*, Ariz.

1944, 149 P. 2d 671; and *McMartin et al.* v. *Fidelity & Cas. Co. of N. Y.*, 264 N. Y. 220, 190 N. E. 414.

Where the record discloses no dispute concerning insured's physical condition over the year prior to his injury, and there being no dispute as to the cause of death, we must find that the court erred in submitting the facts to the jury and erred in giving its instructions. In view of the record the court should have given defendant's requested instruction No. 1 directing the jury to return a verdict of "no cause of action" in favor of defendant and against the plaintiffs.

The judgment of the lower court is reversed. Costs to appellant.

LARSON, C. J., and McDONOUGH and WADE, JJ., concur.

WOLFE, Justice (concurring).

I concur. In this case the facts, through the testimony of the experts, show that the disease was an efficient cooperating cause of the death which, of course, precludes the death from having occurred from bodily injury independent of all other causes. The case of *Lee* v. *New York Life Ins. Co.*, 95 Utah 445, 82 P. 2d 178, is distinguished because where the effects of a disease were walled up so as to be innocuous and that wall was broken down by the direct effect of the injury, it is as if the injury caused a disease and the disease caused the death.

To my mind this case must be considered as overruling the Browning case. The law in the Browning case is correct and well stated but was not applicable to the facts of that case. In that case an injury did not produce a disease which solely caused or efficiently concurred in producing the prolonged incapacity. What happened was that an injury produced a focal point on which toxemia, already at large in the body, found a fruitful spot for its mischief. Thus, the toxemia was the sole cause or at least a preponderating and efficient cooperating cause of the prolongation of the dis-

ability. Certainly where a finger is sprained by a fall and thus furnishes a fruitful place for independent and pre-existing toxemia to work upon, we have a weaker case for the insured under a clause such as exists in the policy involved in the instant case where the fall itself sets in motion forces which act on the diseased condition and cause death. In the Browning case there was no evidence that the fall which caused the sprain on the finger even set in motion or in any way accelerated the toxemia. It simply furnished a fruitful place on which it would banefully work its effects—as said in the dissenting opinion in that case, it set the stage for the actors to walk upon. In this case the accident set in motion forces (increased the blood pressure) which, working on pathological condition, caused death. Certainly if recovery is not allowed in this case because the injury did not cause the death independently of the disease, recovery should not for stronger reasons have been allowed in the Browning case. Therefore, I think the holding in this case must overrule the Browning case.