KANSAS CITY LIFE INS. CO. v. HAYES.

No. 4062.

United States Court of Appeals
Tenth Circuit.

Aug. 25, 1950.

Dan B. Shields, Salt Lake City, Utah, for appellant.

Zar E. Hayes, Salt Lake City, Utah (Harry D. Pugsley and Calvin L. Rampton, Salt Lake City, Utah, on the brief), for appellee.

Before PHILLIPS, Chief Judge, and MURRAH and PICKETT, Circuit Judges.

MURRAH, Circuit Judge.

This is an appeal from a judgment of the District Court of Utah, in a suit by the appellee beneficiary to recover on the double indemnity provision of an insurance policy issued to her husband, Henry D. Hayes, and in force on the date of his death on the 2nd day of June, 1949. The judgment is based upon a jury verdict to the effect that death was accidental, as that term is

defined in the policy, providing for double indemnity if death "resulted independently and exclusively of all other causes, solely from bodily injury effected directly by external, violent and accidental means, within 90 days from the happening of such injury, of which, * * * there shall be visible contusions or wounds on the external part of the body."

The evidence shows without dispute that at the time of his death insured was a man forty-eight years of age, five feet ten inches tall, weighing about 220 pounds, and in previously good health. About 5:30 in the morning, his wife heard a grunting and groaning noise from the basement of their home. Soon thereafter, the insured came to her bedroom in his pajamas, saying that he had fallen head first down the basement steps, but did not believe he was hurt very much. After awhile he dressed and said that he thought he would go to his office. He left in his car about 6:30. About 8:30 his wife noticed his car parked partly in the driveway on the sidewalk, and the insured slumped over the seat, lying on his side. She called for her neighbor to help get insured in the house. On finding that the neighbor was still in bed, and thinking that the car should be moved from the street, she opened the door of the car and asked her husband to move over. When he did not answer, she "squeezed in" and drove the car farther into the driveway. Insured appeared to be sleeping, but made no sound and did not move. His wife went back into the house.

Between eleven and twelve o'clock the next door neighbor returned home from his office to find the insured slumped down in the seat of the car. He raised him to a sitting position, and wiped blood and secretion from his nose. The family doctor was called, and after a preliminary examination by the doctor insured was taken into the house and the Fire Department was called to administer oxygen. After attempts to revive were unsuccessful, he was pronounced dead. There were multiple contusions, abrasions and bruises on the left side of the head, cheek, shoulder, lateral part of his chest, hip and knees.

The family doctor first made out a death certificate in which he gave the cause of death as coronary occlusion. Fourteen days later an autopsy was performed by another physician whose written report gave the cause of death as first, "multiple traumata to almost all portions of the body," and second, "chronic and/or recurrent rheumatic heart disease with formation of ball thrombus in left auricle appendage, which became dislodged and impacted in the mitral orifice, occluding same." Thereafter the family physician filed another death certificate stating death was caused by "multiple traumatic to most portions of the body, due to a fall."

One doctor, specializing in heart diseases, who observed the autopsy, stated that in his opinion the ball thrombus was loosened by the fall of the deceased, and that it eventually occluded the mitral valve of the heart, causing death. From his examination, he considered the insured's heart essentially normal for a man his age, and showed nothing which, in his opinion, would cause death in the absence of the fall. There was also very respectable medical evidence to the effect that the ball thrombus which occluded the mitral valve to the heart, resulting in death, was caused from a rheumatic heart. It seemed to be agreed, however, that the ball thrombus was formed or originated in the appendage to the left auricle; that it could have been attached to the wall of the orifice or might have remained loose for sometime without getting into the mitral valve, where it would cause instant death. The autopsy report stated that the thrombus had been dislodged from the left auricle appendage, and there was testimony to the effect that a fall or blow to the body in the area of the heart might loosen or dislodge the thrombus, if it were slightly appended. In sum, it seems to be agreed that the immediate cause of death was a dislodged ball thrombus which occluded the mitral valve, shutting off circulation. There was a difference of opinion on whether the fall caused the thrombus to dislodge and occlude the mitral valve, or whether the occlusion was caused directly or indirectly from a diseased heart.

Paraphrasing the Utah Supreme Court in Lee v. New York Life Insurance Company, 95 Utah 445, 82 P.2d 178, the trial court instructed the jury that if it found from

the evidence "that the insured accidentally fell and sustained accidental injury which set in motion or started activity of a latent or dormant disease or diseased condition, and such disease or diseased condition contributed to insured's death after having been so precipitated by the accident, then the disease or the diseased condition would not be a contributing cause within the meaning of the terms of the insurance policy, and the death would not be caused directly or indirectly from the disease within the meaning of the insurance policy, but the accident which started this chain of events and precipitated the condition producing the death is the sole cause of the death, within the meaning of this insurance policy."

In thus stating the rule, the Utah Supreme Court in the Lee case, supra, harmonized it with its more exhaustive treatment of the rule in Browning v. Equitable Life Assurance Society, 94 Utah 570, 72 P. 2d 1060, 1073, and 94 Utah 570, 80 P.2d 348. In that case the Utah court classified the adjudicated cases arising out of similar insurance contracts into three categories: "(1) When an accident causes a diseased condition which, together with the accident, results in the injury or death complained of, the accident alone is to be considered as the cause of the injury or death. * * * (2) When, at the time of the accident, the insured was suffering from some disease, but the disease had no casual connection with the injury or death resulting from the accident, the accident is to be considered the sole cause. * * * (3) When at the time of the accident, there was an existing disease which, cooperating with the accident, resulted in the injury or death, the accident cannot be considered as the sole cause, or as the cause independent of all other causes. * * *"

Appellant contends that the appellee's case falls clearly within the third category, and that the evidence conclusively shows that the heart disease, at least, cooperated with the accident to cause the death. In the alternative, it contends that the trial court erred in refusing to instruct the jury as requested, to the effect that plaintiff could not recover if she failed to prove by the greater weight of the evidence, that the heart disease of which the insured was afflicted, did not cooperate with the fall or in any way contribute to it; or, that if the jury found that death was caused from a formation of the ball thrombus in the left auricle appendage, which became dislodged and impacted in the mitral orifice, occluding the same, the plaintiff could not recover, even if they found that the fall aggravated the disease and accelerated its progress to the point of death.

It is said that the facts in this case fall within and are ruled by Tucker v. New York Life Insurance Company, 107 Utah 478, 155 P.2d 173, 176, where the question was whether a fall directly or independently of all other causes, caused a dissection in the intima (inter lining) of the aorta of the heart, resulting in death, or whether death resulted from a cooperation of the fall and the diseased condition. Based upon plaintiff's evidence to the effect that the insured was suffering from an active and progressive heart disease which interacted with the fall to cause death, the Utah Supreme Court concluded that as a matter of law, the existing disease "co-operated with the accident in causing his death," and reversed a judgment for the plaintiff. But, the court was at pains to reaffirm the rule announced in the Browning case, supra, and to distinguish its case from the Lee case, supra, by pointing out that the insured's condition there was dormant and that the injury directly caused it to become active, resulting in death.

Our case is entirely different from Mandles v. Guardian Life Ins. Co., 10 Cir., 115 F.2d 994 and Mutual Life Ins. Co. of New York v. Hassing, 10 Cir., 134 F.2d 714, where the question was whether the accidental injury was brought about directly or indirectly from disease or bodily infirmity. In both of those cases the facts conclusively showed that disease or bodily infirmity directly or indirectly caused the accident, resulting in death. Unlike our case, the question in each case was the cause of the accident, resulting in death.

We agree with the trial court that the facts in our case present a jury question whether the accidental fall set in motion a

330

latent or dormant disease, or diseased condition, resulting in death of the insured. The trial court's instructions being in accordance with Utah law, and the jury's verdict being against the defendant, the judgment thereon is affirmed.

Affirmed.