Argued June 28, affirmed November 14, 1956, petition for
rehearing denied January 23, 1957

# LaBARGE *v.* UNITED INSURANCE COMPANY

303 P. 2d 498
306 P. 2d 380

*Douglas E. Kaufman* argued the cause for appellant. On the brief were McMinimee & Kaufman, Tillamook.

*George P. Winslow* argued the cause for respondent. On the brief were Winslow & Winslow, Tillamook.

ROSSMAN, J.

This is an appeal by the defendant, United Insurance Company, from a judgment, based upon a verdict, which the circuit court entered in favor of the plaintiff in the two sums of $1,600 and $500. The subject matter of the action is a policy of accident insurance which names the plaintiff as the insured. The sum of $1,600, which the challenged judgment awarded to the plaintiff, was given as indemnity for a period of disability which the circuit court found was caused by an accident. The other sum, $500, was awarded as an attorney fee.

The policy insured plaintiff

"against loss of life, limb, sight, or time, sustained or commenced while this policy is in force, resulting directly and independently of all other causes from accidental bodily injuries sustained during any term of this policy, hereinafter called such injury, * * *; subject, however, to all the provisions and limitations hereinafter contained."

and further provided:

"Part Four—If such injury does not result in any of the above mentioned specific losses but shall wholly and continuously disable the Insured for one day or more, the Company will pay indemnity at the rate of One Hundred ($100.00) Dollars per month, beginning with the first medical treatment during disability so long as the Insured lives and suffers said total loss of time, provided the Insured is under the regular and personal attendance of a licensed physician, surgeon, osteopath or chiropractor, other than the Insured."

According to the plaintiff's testimony, he sustained an injury in an accident June 9, 1953, while in the employ of the Lewis Shingle Company, which is located in Wheeler.

By his amended complaint, plaintiff claimed to have been "wholly and continuously" disabled under the terms of the policy from June 13, 1953, the date of the first medical treatment for the injury, to October 13, 1954, and sought to recover payments in the amount of $100 per month for that period. The case was tried before a jury which returned a verdict in favor of plaintiff in the two aforementioned amounts of $1,600 and $500.

The evidence reveals that at the time of the accident plaintiff, then 61 years of age, was employed in a shingle mill where his duties required him to transfer blocks of wood, varying in weight from five to fifty

pounds, from a conveyor belt to nearby sawyers. On May 31, 1953, he stepped on an oil slick while at the mill and fell on his shoulder. He obtained no medical attention as a result of this fall. On June 9, 1953, he stepped on a block of wood and, as a result, was propelled against the moving carriage of a nearby machine, thereby striking his right shoulder, which soon became very painful and impaired in usefulness for his normal tasks at the mill. When the pain persisted despite attempts to alleviate it by heat treatments at home, he sought medical attention on June 13, 1953.

Plaintiff did not return to his job thereafter and was treated frequently from that date for the injury to his right shoulder. On June 24, 1953, his condition became worse and symptoms spread to other parts of his body, including the left shoulder. Plaintiff's physician diagnosed the ailment as rheumatoid arthritis and osteoarthritis.

On October 16, 1953, plaintiff took a job as night watchman at the mill and remained at that job, save for a few days at the end of November, 1953, through the beginning of December, 1953. The pain and impairment of the functioning of the arm persisted throughout that period, and plaintiff could not perform some of his assigned tasks without assistance from fellow employes.

Plaintiff had received payments from the State Industrial Accident Commission for temporary total disability following the accident. These were stopped prior to October 16, 1953, but were reinstated after an appeal by plaintiff and were being paid at the time of trial. Plaintiff also had received approximately eleven weekly payments of $25 each as a result of a compensation application filed with the State Unemployment Commission on December 11, 1953.

At the trial, plaintiff's physician, Dr. Harry G. Beckwith, Jr., testified that plaintiff had been unable to perform any "steady work at gainful employment" since the accident and that he was disabled by rheumatoid arthritis. The physician believed that this condition must have been present prior to the accident, although it had caused no difficulty. He explained that it became active when "triggered off" by the fall.

Defendant presents six assignments of error, but since the first, the alleged error of the court in denying defendant's motion for nonsuit, encompasses all the points raised in the remainder, that alone will be considered.

■ Defendant first contends that plaintiff did not sustain his burden of showing a causal connection between the accident of June 9 and the disability. *Spicer v. Benefit Association of Railway Employees,* 142 Or 574, 17 P2d 1107, 21 P2d 187. This is not the case. The following uncontradicted evidence shows that the jury did not have to resort to guesswork to find that the alleged causal connection was established: (a) Plaintiff was an able-bodied man engaged in earning his living by hard manual labor prior to June 9, 1953. After the incident of that day he worked at that job for only three more days before pain forced him to desist and consult a physician. He never returned to that job. (b) The only medical expert who gave testimony testified to the causal connection between the accident and the disability. (c) A letter signed by the defendant's regional claim auditor on November 4, 1953, and addressed to plaintiff, states:

"We agree with Dr. Beckwith on one point and that is, that the incident that occurred on June 9th was undoubtedly the motivating or activating cause of your difficulty."

■ Defendant next argues that plaintiff's proof failed to support his pleadings in three particulars. The first of these is that the complaint alleged only the accident of June 9, whereas the proof showed that two accidents, one of May 31 and the other the aforementioned one of June 9, combined to bring about the disability. It is true that some testimony indicated that the accident of May 31 was a contributing factor, but, in view of the fact that plaintiff suffered no immediate ill effects from his fall of May 31, as he did from the one of June 9, it cannot be said that the jury could not have found that the June 9 accident was the sole factor in bringing about plaintiff's disability. Even should a contrary view be taken and the proof be considered at variance with the pleadings in this respect, the variance could not be deemed as material. ORS 16.630 states:

> "No variance between the allegation in a pleading and the proof shall be deemed material, unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits."

The fact that the defendant was not misled with respect to the May 31 accident is shown by a letter, dated October 16, 1953, signed by the defendant's regional claim auditor and addressed to plaintiff, which mentions that accident. *Nelson v. Dowgiallo*, 73 Or 342, 143 P 924, 143 P 1199; *Johnson v. Steele*, 154 Or 137, 59 P2d 237.

■ The second alleged failure of proof is that the accident of June 9 was not proven to be the cause of plaintiff's disability "independently of all other causes" since plaintiff's pre-existing arthritic condition operated as an "other cause." That contention

must be resolved adversely to the defendant. *Todd v. Occidental Life Insurance Company of California,* this day decided by us under a policy of insurance substantially similar to the one involved here, held that it was a question for the jury as to whether or not osteoarthritis, with which the insured in that case was afflicted, was a causal factor in the disability which he suffered after an accident befell him. Plaintiff LaBarge has been disabled by rheumatoid arthritis, which, but for the accidental injury, would not have impaired his ability to work in any manner. In the light of such facts, the determination of the jury that the arthritic condition was not an ''other cause'' of the disability will not be disturbed. See *Williams v. General Accident, Fire & Life Assurance Corp.,* 144 Kan 755, 62 P2d 856; *Langeberg v. Interstate Business Men's Accident Assn.,* 57 SD 226, 231 NW 930; *Rebenstorf v. Metropolitan Life Insurance Co.,* 299 Ill App 71, 19 NE2d 420; *Scanlan v. Metropolitan Life Insurance Co.,* 93 F2d 942; *National Life & Accident Insurance Co. v. Upchurch,* 57 Ga App 399, 195 SE 588; *Preston v. Aetna Life Insurance Co.,* 174 F2d 10, cert. den. 338 US 829; *Jones v. General Accident Fire & Life Assurance Corp.,* 118 Fla 648, 159 So 804.

■ The third alleged failure of proof concerns the requirement of the policy that insured be "wholly and continuously'' disabled. Defendant points to the night watchman's job undertaken by plaintiff on October 16, 1953, and the substantial sums which he earned while so engaged. That employment and the facts that the State Industrial Accident Commission stopped payments for temporary total disability prior to October 16, 1953, and that plaintiff later applied for and received unemployment compensation payments are said to preclude the jury from finding that plaintiff was

"wholly and continuously" disabled from the date of his first visit to Dr. Beckwith.

■ *Fagerlie v. New York Life Insurance Co.*, 129 Or 485, 278 P 104, presents a statement of the views of this court on the words in issue. Two policies were involved in that case and both provided that insured could recover if he was "wholly disabled by bodily injury or disease" and thereby "permanently and continuously prevented * * * from engaging in any occupation whatsoever for remuneration or profit". In affirming recovery under both policies, the court said:

> "The policies do not contemplate that if the insured is physically able to possibly do some light work, he is not totally disabled, unless such work may be performed in the exercise of common care and prudence: * * *."

The opinion cited *Fitzgerald v. Globe Indemnity Co.*, 84 Cal App 689, 258 P 458, which states:

> "* * * The ultimate fact to be determined is not what the plaintiff actually did in the way of business duties but what, in the exercise of common care and prudence he was reasonably able to do. Proof of what he did is merely evidence, tending to show his ability to do, just as the opinion of the physicians who testified are evidence to show that his disability was or was not total."

*Dunlap v. Maryland Casualty Co.*, 203 SC 1, 25 SE2d 881, 14 ALR 1, declared:

> "The 'total disability' contemplated by an accident policy does not mean, as its literal construction would require, a state of absolute helplessness; * * *."

The following illustrate various post-accident activities of the insured which the courts hold do not bar a jury finding that the disability was total and continuous.

In *Morgan v. Aetna Life Insurance Co.,* 157 F2d 527 (CCA 7), the insured, manager of a dairy company, had received a severe injury to his back for which he sought indemnity. For seven months following the injury he went to his office two or three times per week for visits ranging in length from ten minutes to one hour. He received payments from his employer in amounts equivalent to his salary during that period. Under a policy requiring insured to be "wholly and continuously" disabled, he recovered judgment. In affirming, the court pointed to the fact that the post-accident services were inconsequential and added that "insured should not be penalized for having made the effort, by denial of recovery."

A long series of attempts by insured to stand on his own feet following an accident is presented in *Hodgson v. Mutual Benefit Health & Accident Assn.,* 153 Kan 511, 112 P2d 121. Insured suffered injuries to his foot, knee and spine and sought to recover under the provisions of a policy requiring him to be "wholly and continuously" disabled. Starting six months after the accident and continuing periodically for more than a year thereafter, insured was engaged for periods of time varying from two weeks to ten months as an insurance salesman, grocery store proprietor, business college student, and night watchman. The jury's finding of total disability was held, however, to be supported by "ample evidence."

*Mann v. Travelers' Insurance Co.,* 176 SC 198, 179 SE 796, affirmed recovery under a policy covering injuries "wholly and continuously" disabling the insured, by saying:

> "The appellant strenuously contends that the fact that plaintiff undertook to return to work and was able to perform a part of his duties and to draw

his full salary for a time would preclude his recovery. The conduct of plaintiff is highly commendable, as he showed that he was doing all he could to minimize the liability of the defendant. If the fact that the insured undertook to do his regular work, even when his final recovery was doubtful, would preclude recovery, it would encourage less scrupulous people to refuse to work so long as they could draw disability compensation.''

In *Haraszmczmuk v. Massachusetts Accident Co.,* 127 Misc 344, 216 NYS 97, the policy covered injuries ''continuously, and wholly'' disabling insured. Plaintiff was denied recovery for a two-weeks period, during which he had returned to work following an accidental injury, solely because his first claim for that period was filed as an amendment to his complaint at the time of trial. The court, however, said:

''The evidence shows conclusively that the plaintiff, during the two weeks in question, was endeavoring to work at a time when in fact he was physically disabled to do practically any substantial kind of work, and he did not work at his regular employment. The fact that he endeavored to work during the two weeks in question does not bar him, in my opinion, from coming within the provisions of the policy which provides that the accident shall 'immediately, continuously, and wholly disable and prevent the insured, from the date of the accident, from performing every duty pertaining to any business or occupation.' ''

and added:

''When one who has an accident policy, such as the one in question, endeavors honestly and faithfully to work, must such a person be penalized, or must they lean toward the side of being a malingerer to recover?''

The jury must determine whether the facts present a case of total and continuous disability. A period of

post-accident employment is relevant to that determination, but does not foreclose it. When insured has undertaken such employment, here as a night watchman, it is for the jury to say whether, from the evidence, he was reasonably able to do so. A conclusion that he was not is supported by the testimony of plaintiff and his wife that plaintiff was continually in pain during the period of the employment; by the testimony of plaintiff and a fellow employee that plaintiff could not, and did not, perform many of the tasks which the watchman ordinarily was called upon to do; and by the testimony of plaintiff's physician.

Evidence of the aid provided plaintiff by the various agencies of the State of Oregon was likewise before the jury for its consideration. Its conclusions, in the light of all the evidence, should not be disturbed.

The challenged judgment is affirmed.

McALLISTER, J., did not participate.

## ON REHEARING

McMinimee & Kaufman, Tillamook, for the petition.

Winslow & Winslow, Tillamook, for respondent.

ROSSMAN, J.

In the brief which the defendant-appellant submitted in support of a petition for rehearing it cites thirteen authorities which, it claims, indicate that our previous decision is unsound. We have examined all of the cited cases. In view of the fact that accident insurance policies have given rise to a large volume of litigation, the authorities collected by the defendant-appellant could be amplified materially. We have gone beyond those submitted and studied many more. Among the decisions cited by the defendant-appellant is *Tucker v. New York Life Ins. Co.*, 107 Utah 478, 155 P2d 173, in which the decedent's beneficiary sought to recover

under the double indemnity provision of a life insurance policy. In making provision for double indemnity, the policy contained restrictions upon the insurer's liability which are absent from the one now before us. In the following quotation from the policy we have placed in italics the principal terms that do not occur in the LaBarge policy.

"* * * upon receipt of due proof that the death of the Insured resulted directly and independently of all other causes from bodily injury effected *solely* through external, violent and accidental cause, * * *. *This double indemnity benefit will not apply if the Insured's death resulted from physical or mental infirmities; or directly or indirectly from illness or disease of any kind.*"

It was the plaintiff's burden in that case to establish that the accidental injury sustained by decedent was the sole cause of his death. Judgment for her was reversed. The court held that the fall which precipitated the death was not the sole cause of death. Medical testimony showed that the cause of death was a ruptured aorta and that decedent's aorta was diseased prior to the fall. Higher blood pressure brought about by the fall had been instrumental in rupturing the aorta. Significantly, however, the court continued:

"We also think the law announced in Lee v. New York Life Ins. Co., 95 Utah 445, 82 P.2d 178, supports our conclusion. In that case the facts were materially different. Lee previously had been ill from gall bladder trouble, but at the time of the accident this condition was not active, but dormant, and was completely walled off, and had not the injury directly disturbed this and caused it to become active, the condition which was dormant and walled off might never have contributed to the insured's death."

In a concurring opinion, one member of the court declared:

"* * * In this case the facts, through the testimony of the experts, show that the disease was an efficient cooperating cause of the death which, of course, precludes the death from having occurred from bodily injury independent of all other causes. The case of Lee v. New York Life Ins. Co., 95 Utah 445, 82 P.2d 178, is distinguished because where the effects of a disease were walled up so as to be innocuous and that wall was broken down by the direct effect of the injury, it is as if the injury caused a disease and the disease caused the death."

The double indemnity clause in the Lee case was virtually the same as in the Tucker case.

The effect of the doctrine enunciated in the two quoted paragraphs, and employed by us in our original decision, is to grant the insured the protection for which he bargained at the inception of the policy coverage. When the policy was issued, LaBarge was an able-bodied working man who had a job which called for uncommon agility and muscular strength. He had lost no time from his employment and, so far as he was aware, he was sound in limb and body. When he applied for insurance he desired income protection in the event that an accident kept him from earning his livelihood.

Certainly, physical differences, as is recognized in *Todd v. Occidental Life Ins. Co. of California,* 208 Or 634, 303 P2d 492, render some more susceptible to the sustaining of crippling disabilities after trauma than others, but unless the differences are great enough in and of themselves to threaten imminent disability of the kind actually resulting, they cannot later be said to have been the cause of the disability. In the case at

bar, LaBarge's arthritic condition constituted no such threat.

*John Hancock Mutual Life Ins. Co. of Boston v. Crack*, 216 F2d 805, was decided by a panel of three Circuit Court Judges (Parker, Soper and Dobie) whose eminence is impressive. In that case, the insured, while walking upon a pier at night, accidentally stubbed his toe on the planking and fell over the side of the pier into the frigid waters of the Potomac River. After he swam about forty feet in a desperate struggle to save his life he disappeared under the surface and was drowned. The plaintiff sought to recover upon a double indemnity feature of a policy which the defendant had issued to the deceased. It required proof

> "showing that (1) the Insured's death was caused directly, independently and exclusively of all other causes, by a bodily injury sustained solely by external, violent, and accidental means  *  *  *."

It excluded liability

> "if death results, directly or indirectly, wholly or partially, (1) from any bodily  *  *  *  disease or infirmity,  *  *  *."

A post mortem examination showed that the insured's death was due to drowning, but it also showed a diseased condition of the heart and arteries. Further, it gave indication that the insured had suffered a coronary attack. The trial judge ruled:

> "*  *  *  the fall into the water 'independently and exclusively' caused Clarence Crack's death—his death did not result 'wholly or partially from any bodily  *  *  *  disease or infirmity.' His heart disease was not a cause but a remote condition."

In sustaining the ruling, the appellate judges aforementioned declared:

> "Appellant argues that a coronary attack following the fall into the water rendered the insured

incapable of swimming and that this contributed to his death. The trial judge, however, found that this was a mere possibility and that the cause of death was drowning caused by the accidental plunge into the water. There is nothing in the record which would justify us in disturbing this finding. Even if insured suffered a coronary attack which prevented his swimming, it is clear that he died, not of the heart attack, but of drowning; and the heart condition resulting in the inability to swim would no more bar recovery than would any other condition resulting in such disability. If, for example, insured had been suffering from partial paralysis so that he was unable to swim and had accidentally fallen into water and been drowned, no one, we think, would contend that the paralysis was the cause of death, so as to remove it from the coverage of the policy. The paralysis there would be a mere condition, not the cause of death, and the same is true of the heart condition here even if it resulted in inability to swim; but, as stated, the judge found this a mere possibility and, as there is no basis for disturbing this finding there is no occasion to go into the matter further.''

Thus, the court reasoned that if an insured who has a diseased heart accidentally falls into water and loses his life, his death must be attributed to the accident even though heart failure may have prevented him from swimming to the nearby shore. The result, obviously, was right, for the policy contained no provision that the insured must be a capable swimmer and none that restricted recovery to those whose hearts and other organs are free from infirmities.

It seems reasonable to infer that in the John Hancock Life Insurance Company case, which we just reviewed, the insured might have lived for many years even though his heart was diseased. But, whether or not the future held in store for him long life or only a

few weeks, the accident ended his days. The court deemed that the precise manner in which the end came, whether by heart failure or drowning, was immaterial. The cause of his death was not the manner in which it was effected but the head-on fall into the frigid water. But for the accident the insured would have continued to walk along the pier.

■ Likewise, in the case at bar, LaBarge could have kept on working indefinitely and would have done so but for the accident. It was the latter which marked the end of his career as a wage earner. It was the "cause" of his misfortune. Possibly if the insured in the John Hancock Life Insurance Company case had had the sound heart of Gertrude Ederle, which enabled her to swim the English Channel, he would have saved his life and there would have been no action upon the policy. Likewise, if LaBarge had been able to sustain the devastating blows which a heavyweight champion must absorb, he would not have been inconvenienced by the trauma which we have described. But the defendant's policy makes no demand that the insured must be in the pink of condition when trauma occurs; nor does it restrict liability to instances in which the accident is so violent that even the most powerful succumb to it.

The decision previously announced in this case is in harmony with the one rendered in the Todd case. The policy issued to Todd contained a provision restricting the insurer's liability in a manner similar to that in *Tucker v. New York Life Ins. Co.*, supra. The clause excluded "death, disability or other loss caused or contributed to (1) by bodily or mental infirmity, * * * or (3) by any kind of sickness * * *." A provision of that kind received attention in *Lucas v. Metropolitan Life Ins. Co.*, 339 Pa St 277,

14 A2d 85, 131 ALR 235, in which the court held that the clause placed upon the insured an additional burden "if the proof points to a pre-existing infirmity or abnormality which may have been a contributing factor."

The decision in the Todd case recognized that by the time people reach sixty years of age all are afflicted with osteoarthritis. But the latter is only one of the disorders which come to those who pass middle life. *Silverstein v. Metropolitan Life Ins. Co.*, 254 NY 81, 171 NE 914, which received much attention in the Todd decision, by resort to *Collins v. Casualty Company of America*, 224 Mass 327, 112 NE 634, LRA 1916E, 1203, declared that recovery upon a policy will not be denied "to one whose hip has been fractured because his bones had become brittle with the advent of old age." The Silverstein opinion quoted the following from Chief Justice Rugg, in *Leland v. Order of United Commercial Travelers of America*, 233 Mass 558, 124 NE 517:

> "If there is no active disease, but merely a frail general condition, so that powers of resistance are easily overcome, or merely a tendency to disease which is started up and made operative, whereby death results, then there may be recovery even though the accident would not have caused that effect upon a healthy person in a normal state."

In *Nichols v. Loyal Protective Life Ins. Co.*, 63 Ohio App 558, 27 NE2d 421, the court said:

> "The evidence clearly supports the inference that he slipped on the ice and fell, and while it is true that because of his heart condition the injuries and shock from the fall may have affected him more seriously than it would a younger and more rugged man, or that a rugged man might have survived the results of the fall, this would not bar a recovery."

*Preferred Accident Ins. Co. of New York v. Combs,* 76 F2d 775, declares:

"All men do not possess like physical strength, immunity to disease, and resistance to senile degeneration. Some are 'inherently' strong, others achieve strength only through a vigorous, patient, and systematically prescribed course of development. Although aware of great discrepancies in physical vigor between individuals, insurance companies issue accident policies to the weak as well as to the strong; to the old as well as to the young. And to these contracts the companies are held. That an insured is frail or is in a generally weakened condition does not relieve the company from its obligations under the policy."

■ It is always the burden of the insured to establish that the accidental trauma was the cause of his disability. In *Hutchinson v. Aetna Life Ins. Co.,* 182 Or 639, 189 P2d 586, the beneficiary failed to present any evidence whatever that the insured had met with an accident and, therefore, this court held that the defendant was not liable.

■ In the case at bar, it is clear that LaBarge met with an accidental injury and that he has since been unable to work. The sole issue is whether or not the trauma, accidentally inflicted, is the cause of his disability or whether the dormant arthritis is the cause. Had it not been for the accident, he would have continued his work in the shingle mill. Likewise, as we have seen, had it not been for the accidental fall into the river, the insured in the John Hancock Life Ins. Co. case would have continued to live.

In *Young v. New York Life Ins. Co.,* 360 Mo 460, 228 SW2d 670, the court, in a carefully reasoned opinion which sustained liability, said:

"* * * So, in this case the insured had a dormant or inactive case of tuberculosis which was

caused to become active as a result of a fall. Death followed. In the Fetter case the insured might have eventually come to his death as a result of cancer. In this case the insured might have eventually died of tuberculosis. But he might not have died of such disease if it had not been for the fall. The fall activated a dormant condition resulting in death. We think the Fetter case controlling. For cases from other states supporting this theory see * * *."

The following is taken from *Fidelity & Casualty Co. v. Meyer,* 106 Ark 91, 152 SW 995, 44 LRA (NS) 493:

"It is contended that that instruction is wrong, and that it involves an erroneous construction of the terms of the policy, in that it permits a recovery even though the previously existing disease had cooperated in producing death. The determination of this question involves the construction of that part of the policy which limits liability to 'bodily injuries sustained through accidental means resulting directly, independently and exclusively of all other causes in death.' The effect of this instruction was to make the company liable, under the contract, if death resulted when it did on account of the aggravation of the disease from the accidental injury, even though death from the disease might have resulted at a later period, regardless of the injury. We are of the opinion that that is the correct interpretation of the contract, for if the injury, by aggravating the disease, accelerated the death of the assured, then it resulted 'directly, independently and exclusively of all other causes.' In other words, if death would not have occurred when it did but for the injury resulting from the accident, it was the direct, independent, and exclusive cause of death at that time, even though the death was hastened by the diseased condition."

*Barnett v. John Hancock Mutual Life Ins. Co.*, 304 Mass 564, 24 NE2d 662, 126 ALR 608, holds:

"The question is whether this latter disease can be attributed solely and exclusively to the automobile accident. The insured was not suffering from this disease at the time of the accident. Pneumonia bacteria get into the system through the respiratory tract where they may remain harmless for days or months until a person's resistance is so lowered that they can impart themselves to the tissues and set up this disease. If, at the time of the accident, pneumonia germs were in his system and, as a result of the accident, his power of resistance was so lowered that these germs became active and developed into pneumonia, then the jury were warranted in finding that the accident alone was the cause of this disease and that the death of the insured was 'caused solely by external, violent and accidental means * * * independently and exclusive of all other causes.' "

*Scanlan v. Metropolitan Life Ins. Co.*, 93 F2d 942, ruled:

"One may recover on an accident policy such as here in issue although the insured suffers from bodily infirmities. If the accident brought about conditions from which death resulted, the fact that the insured was ill, aged or infirm, or had bodily or mental infirmities, would not bar recovery provided the accident excited the bodily infirmity into activity and death resulted. If the infirmity alone would not have caused death, it cannot be said to have caused death when the immediate result was occasioned by an infirmity which became active only because of the accident. The infirmity may have made the insured less able to resist, but if the accident caused the condition which in turn affected the weak spot which did not resist as well as a healthy body, the cause is nevertheless the accident, and recovery cannot be avoided or evaded."

We shall resort to the authorities no further. Many more contain statements to the same effect as the quotations which we have just employed. Some of those which we have in mind are cited in our original opinion.

Appellant's brief, with commendable frankness, says:

> "There is evidence that there were accidents and that the accidents aggravated the pre-existing latent arthritic condition. There is further evidence that respondent was disabled for a period of time."

Our original opinion quotes from a letter which the appellant sent to the plaintiff November 4, 1953. In another letter, dated January 7, 1954, the appellant, referring to the same matter, wrote as follows: La-Barge, January 7, 1954, containing this statement:

> "As stated in our letter of November 5th, we agree with Dr. Beckwith and that is that the incident which occurred on June 9, 1953, was undoubtedly the motivating or activating cause of your disability."

The parallel between this and the Todd case consists of the fact that up to the moment of the accident the arthritis with which each insured was afflicted was, so far as his daily activities were concerned, dormant. Each insured up to that juncture was an able-bodied working man who was performing a full day's work. The arthritis had not inconvenienced Todd nor La-Barge and had not kept either of them at home or compelled either to visit a physician. Then came the accident and thereupon neither was any longer able to do the very thing for which he had obtained the protection of the accident insurance policy. But for the accident each would have continued in the performance of his daily work. In each instance we must treat the arthritis, not as a cause, but as an inert condition.

In writing the above, we realize that Todd's case has been remanded for the reception of additional evi-

dence. Nothing said in this opinion should be deemed a prejudgment of the evidence which may later be presented in that case.

The evidence shows that, prior to the accident, LaBarge had arthritis, but it was dormant. The defendant's brief concedes that the proof indicates that the arthritic condition was not active. "Latent" is the word which the defendant employs in describing the insured's arthritic condition, as appears from the foregoing excerpt taken from its brief. The defendant concedes that the latent condition was "aggravated" by the accident and was thereby caused to become active and disabling. The medical testimony fully warrants the concessions which the defendant makes. It shows that the arthritis had not troubled LaBarge up to the time the accident befell him. Until that day he had been a faithful workman who prided himself upon his ability to discharge the duties of an employment which called for rugged strength and uncommon quickness. The evidence brings this case fully within the rule which treats abnormalities as dormant when they do not prevent the insured from going about his daily activities and earning his livelihood. When such is the case, the abnormality is not deemed the cause if an accident happens which lowers the resistance and thereby permits the dormant condition to disable the insured.

The jury's verdict was for the plaintiff and, in our opinion, was supported by substantial, competent evidence.

Our decision went no further than to afford the insured the protection which he and the insurer intended he should have when the policy was written.

The petition for a rehearing is denied.