**UNDERWRITERS AT LLOYD'S, LONDON, ENGLAND, Appellant,**

v.

**Jane S. LYONS, Appellee.**

**GLENS FALLS INDEMNITY CO., a corporation, Appellant,**

v.

**Jane S. LYONS, Appellee.**

**Nos. 15412, 15413.**

United States Court of Appeals
Ninth Circuit.

Sept. 23, 1957.

Meindl, Mize & Kriesien, Ray Mize, R. E. Kriesien, Portland, Or., for appellants.

Maguire, Shields, Morrison & Bailey, Robert F. Maguire, Howard K. Beebe, Portland, Or., for appellee.

Before HEALY, POPE, and CHAMBERS, Circuit Judges.

HEALY, Circuit Judge.

Appellee's husband, James Lyons, died while on a hunting trip in Mexico. Appellee, as beneficiary of certain accident insurance policies severally issued the deceased by appellants, brought suit to recover thereon. The suits were consolidated for trial and were heard by the court sitting without a jury. Judgment was granted in appellee's favor.

The sole issue in the case is whether Lyons' death was caused by accidental means. Responsive to the terms of the

policies, the court made findings that Lyons "sustained bodily injury by accidental, violent, external, and visible means which solely and independently of any other cause occasioned his death within three calendar months from the date of the accident which caused such injury." It further found that the injury was caused by the accidental discharge of a shotgun; that Lyons was a vigorous, robust man of normal health for his age (49 years) and was not suffering from disease, and that his death was not caused or contributed to directly or indirectly by disease or natural causes.[1]

The record consists in major part of expert medical testimony. It appears that in February of 1953 Lyons upon return from an extensive business trip complained of pain in his chest and arms. He consulted a Dr. McBride who made an examination including an electrocardiograph test of his heart. McBride (who testified in the case by deposition) found no symptoms of anything organically wrong, and he diagnosed Lyons' condition as heart fatigue, which he characterized as a non-dangerous condition brought on by over fatigue and tension. Lyons was planning on an extensive hunting and fishing trip, and McBride advised him to go ahead with the plan. On the trip he was accompanied, among others, by a Dr. Rush and a Dr. Chamberlain, neither of whom he had ever met before. Both these men were highly qualified heart specialists, more especially Dr. Chamberlain, who, according to the record, is one of the top men in his field in the country.

The parties met at San Diego and flew down into Mexico by private plane at an elevation of 7,000 feet. Lyons, so Drs. Rush and Chamberlain testified, showed no signs of illness or shortness of breath or distress at that elevation. The parties did some fishing, and Lyons wrestled a large marlin for a half hour without signs of distress. Also he carried on his share of the camping work, which the record indicates as being rugged.

Just prior to his death Lyons was hunting doves with a 12-gauge magnum shotgun, using magnum shells which explode with considerably greater force than ordinary shells. He was a few yards away from Dr. Rush and was unobserved by anyone, when there were heard two rapid shots, followed within seconds by stertorous breathing. Dr. Rush reached the insured in a matter of seconds, and found him lying on his shotgun. His face, the doctor testified, had been injured by a blast of the gun, and he was bleeding and bruised and one pellet was lodged under the skin. Rush felt a "purring" action in the man's chest instead of a regular heart beat. Artificial respiration was tried, and shortly sputum was emitted which gradually became tinged with blood. Insured died within a matter of five to seven minutes.

An autopsy was performed by two young Mexican doctors, who concluded that death had occurred as a result of "aortic insufficiency."

Both Drs. Rush and Chamberlain testified that in their opinion Lyons' death was brought about by the accidental firing of the shotgun. This, they said, had a traumatic effect on the insured, causing his heart beat to increase to some 300 beats per minute, which accounted for the "purring" felt by Rush. Such a heart beat will not sustain life. Considering all the evidence, these two witnesses felt that their diagnosis was the only explanation consonant with the known circumstances. They admitted that there were several things which could have caused death, but they eliminated all other causes on the ground that they did not fit the facts. They described the insured's heart, although not perfect, as being normal for a man of his age.

Naturally appellants' experts expressed views at variance with those entertained by Rush and Chamberlain, but,

---

1. The trial judge's opinion in the case is reported in 145 F.Supp. at page 877.

as the trial judge remarked, they did not have the opportunity to observe the assured at the close range afforded the latter.

Appellants' primary argument is that the opinions of Drs. Rush and Chamberlain were purely speculative and conjectural and afforded no substantial evidence to support the judgment in appellee's favor. For this proposition they rely mainly on the holding of the Oregon Supreme Court in the case of Hutchison v. Aetna Life Ins. Co., 182 Or. 639, 189 P.2d 586. However, the evidence in that case bears no perceivable resemblance to that produced here. The much more recent Oregon decisions in Todd v. Occidental Life Ins. Co., Or., 295 P.2d 870 (withdrawn on rehearing at 303 P.2d 492), and La Barge v. United Ins. Co., Or.1956, 303 P.2d 498, confirmed on rehearing Or.1957, 306 P.2d 380, tend strongly to support the judgment rendered here. In its discussion on rehearing in the latter case the court observed (at page 385 of its opinion) that "the evidence brings this case fully within the rule which treats abnormalities as dormant when they do not prevent the insured from going about his daily activities and earning his livelihood. When such is the case, the abnormality is not deemed the cause if an accident happens which lowers the resistance and thereby permits the dormant condition to disable the insured."

We are constrained, also, to bear in mind the summary reversal by the Supreme Court of the decision of the Fifth Circuit Court in the analogous case of Carolina Life Ins. Co. v. Williams, 210 F. 2d 477. There the jury had returned verdicts for the plaintiff beneficiary as against the defendant insurance companies, and on appeal from the judgment entered the Court of Appeals had reversed the judgment as based on mere speculation. On certiorari the judgment was reversed by the Court without opinion, 348 U.S. 802, 75 S.Ct. 30, 99 L.Ed. 633. Consult, also, McAllister v. United States, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20.

Affirmed.