Argued October 2, reargued December 6, 1963, reversed
January 22, 1964

# FINLEY *v.* BUSINESS MEN'S ASSURANCE
## COMPANY
### 388 P. 2d 459

*John H. Horn,* Roseburg, argued the cause for appellant. With him on the brief were Horn & Slocum, Roseburg.

*Eldon F. Caley,* Roseburg, argued the cause for

respondent. With him on the brief were Long, Neuner, Dole & Caley, Roseburg.

Before McAllister, Chief Justice, and Rossman, Perry, Sloan, O'Connell, Goodwin and Denecke, Justices.

ROSSMAN, J.

This is an appeal by the plaintiff, Venice W. Finley, from a judgment of the circuit court for Douglas County in favor of defendant, Business Men's Assurance Company of America, which is based upon Findings of Fact and Conclusions of Law. This is a companion case to *Finley v. Prudential Life and Casualty Insurance Company*, 236 Or 235, 388 P2d 21, decided December 31, 1963. This case involves a different insurance company as party defendant and consequently a different insurance policy. But, aside from the wording of the policy, the cause of action arises out of the same fact situation as presented in *Finley v. Prudential*.

Plaintiff here seeks recovery under a double indemnity supplement attached to a life insurance policy issued to Jack Vernon Finley which named the plaintiff as beneficiary. The material part of the policy provides:

"In the event of the death of the insured while this policy and supplement are in force, during the period of payment of premiums and before the date of expiry shown above, if such death results from bodily injuries effected solely through accidental means and within ninety days from the date of such injuries, the Company will pay the beneficiary in addition to any benefits otherwise payable, a sum equal to the face amount of the policy. Such addi-

tional amount shall be payable to the beneficiary upon receipt of due proofs of death."

"Risks Not Assumed—Agreement to pay under this provision does not cover death resulting directly or indirectly from the following causes:

\* \* \*

"2. disease \* \* \*"

The trial court's findings reveal as the basis of the judgment "that the physical conditions, disease or injuries from which Jack Vernon Finley died on January 25, 1962, were not effected solely through means that were accidental," and "that the death of Jack Vernon Finley resulted directly or indirectly from the said pre-existing active diseases." (Emphysema, Chronic bronchitis). Plaintiff (appellant) assigns these findings as error.

Dr. Paul Kliewer, the physician who took care of Finley when the latter was brought to Lakeview Hospital and who is the only practitioner who testified upon the subject, stated:

"A  I feel that the cause of death would be directly attributed to exposure in a man who previously had a long history of lung trouble with emphysema, bronchiectosis, [sic] chronic-bronchitis, all of which resulted in an acute bronchial pneumonia and death.

"Q  Assuming, Doctor, that Mr. Finley suffered exposure to weather 35 degrees below zero and colder some two to four days prior to his admission to the hospital, and assuming that prior to such exposure he was suffering from asthma, emphysema, and chronic bronchitis, and that his left lower lung lobe had been surgically removed, can you state within the reasonable medical probability whether the exposure to said cold weather brought

about and caused the condition which resulted in Mr. Finley's death?

"A Yes, I believe this is the case. That exposure was actually the cause of death.

"Q Can you, within the realm of reasonable medical probability, say that there was no independent intervening cause unproduced or uninfluenced by the exposure, which, acting of itself and without stimulation by the exposure, tended to produce the death of Mr. Finley?

"A As far as I know, there was no independent intervening cause."

Two basic questions under this policy are precipitated by this appeal: (1) whether Finley's bodily injuries were effected by accidental means and (2) whether his death resulted directly or indirectly from disease. We will now consider the first question.

Rarely can a single cause be assigned to a trauma of the human body. Injuries are made up of a network of causes interacting that result in damage, and it would be practicably impossible to assign one sole cause that brought about the harm to the exclusion of all others.

By returning to the excerpt from the policy which is quoted in a preceding paragraph of this opinion, it will be noticed that the policy contains two provisions governing the defendant's agreement to make payment of double indemnity to the beneficiary under circumstances such as those that are disclosed by this case. The first of the provisions requires the defendant to pay "if such death results from bodily injuries effected solely through accidental means." The initial inquiry under that provision is whether the injuries were effected solely by accidental means; if this is found to be so, then the death, to be compensable, must

result from those injuries. However, there is no requirement that death must result solely from the injuries. The second provision is that the defendant's agreement to pay "does not cover death resulting directly or indirectly from * * * disease."

We held in *Finley v. Prudential Life & Casualty Insurance Company,* supra, that Finley was injured by accidental exposure to sub-zero weather. He sustained frost-bite and lung damage which resulted in acute broncho-pneumonia and death. The reasoning and authorities set forth in that case are applicable here and we find no necessity for repeating them. The exposure was due to accident and was the immediate predominant cause of Finley's injuries.

The double indemnity supplement, as we have seen, excludes from its coverage death resulting directly or indirectly from disease. Defendant (insurance company) contends the pre-existing bronchial disorders of insured were "virulent," "active," and "disabling." It further argues that they directly or indirectly caused the death. We will give that contention more attention.

Admittedly these lung maladies played a part in bringing on the death of Mr. Finley. His resistance to the effects of exposure was reduced by the lung diseases making him more susceptible to harm from exposure. But this is not to say that the pre-existing diseases were the cause of his death—directly or indirectly.

If we accept the contentions of the defendant, the coverage of the double indemnity provision would be restricted beyond the reasonable intendment of the parties. If there could be discovered in a man's body a condition that under scientific test would be deemed

to render him less capable of resisting the results of accidental injuries, the policy would afford no coverage. A man may be suffering from some disease such as diabetes or tuberculosis which has weakened his resistance, but he may nevertheless become the victim of an accident resulting in death although death might have been less likely had he been in better physical condition. In such a case disease and low vitality do not rise to the dignity of concurring causes, but, in having deprived the body of its normal powers of resistance, appear rather as allies of the agencies set in motion by the accidental exposure. An accidental blow from a fist which would hardly annoy some one in superb physical condition such as the heavy-weight boxing champion of the world could end the life of an average man. Yet it would be deemed the cause of the latter's death. The words of Justice Cardozo in *Silverstein v. Metropolitan Life Insurance Co.,* 254 N.Y. 81, 171 NE 914, are particularly apropos:

"\* \* \* A policy of insurance is not accepted with the thought that its coverage is to be restricted to an Apollo or a Hercules."

See also *Miller v. United Insurance Co.,* 113 CA2d 493, 248 P2d 113, (Calif); *Standard Acc. Ins. Co. v. Rossi,* 35 F2d 667; *Young v. New York Life Ins. Co.,* 360 Mo 460, 228 SW2d 670; *O'Ferrall v. Metropolitan Life Ins. Co.,* (1938 Mo App), 121 SW2d 304; *Travelers Ins. Co. v. Johnston,* 204 Ark 307, 162 SW2d 480; *Kangas v. New York Life Ins. Co.,* 223 Mich 238, 193 NW 867; See further the extensive annotation 84 ALR2d 176. *Roberts v. Woodman Acci. Co.,* 233 Mo App 1058, 129 SW2d 1053; *N. Y. Life v. McGehee,* 260 F2d 768; *Rieger v. Mutual Life Ins. Co.,* 234 Mo App 93, 110 SW2d 878.

If Finley had the physical constitution of an Arctic explorer, he might have been able to survive the mile and a half trek in the sub-zero weather. The double indemnity supplement makes no demand that the insured be an "Apollo," a "Hercules," or be in top physical condition when the accident occurs. The reasonable intendment of this provision is to insure Finley against the premature interruption of his life by accidental means. It is idle to speculate how many years Finley would have continued to live with his bronchial disorders had he not suffered this accidental exposure to severe cold in his search for shelter. But it requires no speculation to determine that his vital processes were halted by this fortuitous set of circumstances acting on a body less able to combat the deleterious effects. The accidental exposure was the efficient predominating cause of insured's death.

This decision is not at variance with our decisions in *LaBarge v. United Insurance Co.,* 209 Or 282, 303 P2d 498, 306 P2d 380, and *Todd v. Occidental Life Ins. Co.,* 208 Or 634, 295 P2d 870, 303 P2d 492. In those cases we were concerned with insured's disability and not his death; however, essentially the same principles apply. We recognized in those cases that unless a pre-existing disease is great enough in and of itself to threaten imminent disability it cannot be said to be the cause of the disability. We noted that both Mr. LaBarge and Mr. Todd had a dormant disease which was activated by the accidental injury which befell each of them. Each carried on a normal life and pursued the tasks of his employment without hinderance from the disease. We held the fact of their pre-exist-

ing disease did not deny them the right of recovery under their respective insurance policies.

The law of the LaBarge case is succinctly stated in the opinion upon the petition for rehearing. There the court stated unanimously:

> "Certainly, physical differences, as is recognized in Todd v. Occidental Life Ins. Co. of California, 208 Or 634, 303 P2d 492, render some more susceptible to the sustaining of crippling disabilities after trauma than others, but unless the differences are great enough in and of themselves to threaten imminent disability of the kind actually resulting, they cannot later be said to have been the cause of the disability. * * *

> * * *

> "* * * The evidence brings this case fully within the rule which treats abnormalities as dormant when they do not prevent the insured from going about his daily activities and earning his livelihood. When such is the case, the abnormality is not deemed the cause if an accident happens which lowers the resistance and thereby permits the dormant condition to disable the insured."

Mr. Finley was leading a normal life and carrying on the daily tasks incident to his vocation of steel erector and building contractor. His diseases were known to him; he took medication and adjusted his activities so as not to overexert himself. He had not been hospitalized since the operation for removal of a part of one of his lungs in 1956. The lung disorders, though not hidden or dormant, were controlled by the insured and were not great enough in and of themselves to threaten imminent death.

The briefs of both parties to this litigation cite decisions from other jurisdictions for our consider-

ation. A perusal of the extensive annotation in 84 ALR2d 182 indicates this problem has been faced in nearly every jurisdiction in the United States. There is no consistency in the results or reasoning. We feel it is unnecessary to review decisions from our sister states and attempt to distinguish or reconcile the results. There are no decisions of this court that demand a result contrary to the one we just reached. The decisions cited in a preceding paragraph, which sustained the insurer's liability to the beneficiary, were based upon policy provisions substantially similar to the one now before us. The oldest of those decisions was announced in 1923. The policy in that case (*Kangas v. New York Life Ins. Co.*) provided:

> "New York Life Insurance Company agrees to pay to Jemina Kangas * * * three thousand dollars * * * upon receipt of due proof of the death of John E. Kangas, the insured, or double the face of this policy upon the receipt of due proof that the death of the insured resulted directly and independently of all other causes, from bodily injury effected solely through external, violent and accidental causes * * * after sustaining such injury. This double indemnity benefit will not apply if the insured's death * * * resulted * * * directly or indirectly from illness or disease of any kind."

The court upheld the insurer's liability to the beneficiary.

When the defendant, in writing the policy now before us, employed a provision which expressed the circumstances under which the beneficiary could recover the double indemnity, it did so with knowledge that several courts, after bestowing careful attention upon the issue, had construed provisions of that kind

as meaning that even if the insured were in impaired health when an accident cut short his life, the beneficiary could recover. Therefore, it wrote the present policy with knowledge that the courts would continue, in all likelihood, to decide cases such as this one in favor of the beneficiary.

The judgment of the circuit court is reversed.