Thelma C. CROUCH, Plaintiff,

v.

OHIO NATIONAL LIFE INSURANCE COMPANY, a corporation, Defendant.

Civ. No. 67-278.

United States District Court D. Oregon.

Jan. 4, 1968.

Glen McCarty, Portland, Or., for plaintiff.

James F. Spiekerman, Mautz, Souther, Spaulding, Kinsey & Williamson, Portland, Or., for defendant.

## OPINION AND FINDINGS

KILKENNY, District Judge:

Plaintiff prosecutes this action to recover on the double indemnity provision in her husband's life insurance policy with the defendant. The insured paid $250.10 per annum for the ordinary life coverage of $5,000.00. This feature of the policy is without restriction, as to cause of death, after the policy was in effect for two years. For an additional annual premium of $9.00, he received double indemnity or an additional coverage of $5,000.00, with restricted provisions as to the cause of death.[1] The law suit concerns itself only with the liability of defendant on the double indemnity provision.

There is no significant dispute on the facts. Decedent had a history of heart failure, which caused his hospitalization in July of 1966, at which time his lungs were congested, his legs swollen and his heartbeat in a rapid and irregular manner. He was hospitalized from July 20th to August 5th, after which he gradually increased his workload in his tavern, so that on October 8th his health had im-

---

1. That " * * * the death * * * result, * * * independently of all other causes, from violent, external, and accidental means. * * * " and not " * * * directly or indirectly from * * * disease in any form, * * * ." or " * * * directly or indirectly from * * * bodily * * * infirmities * * * ."

proved to such an extent that he was taking an active part in the operation of his business. In the early morning of that day, two armed robbers assaulted and then battered the assured for a period of twenty to thirty minutes, leaving him in a semiconscious condition. On arriving at the hospital, it was observed that he had bruises on his body, after which time he was placed in the intensive care department until his death on October 10th. The death certificate and the autopsy report listed the cause of death as "recurrent acute congestive heart failure, following a traumatic physical assault."

█ (1) I have no difficulty in concluding that decedent died from violent, external and accidental means. Trevathan v. Mutual Life Ins. Co. of N. Y., 166 Or. 515, 525, 113 P.2d 621 (1941); Appleman on Insurance, Vol. 1A, § 391, p. 22 (1965).

█ (2) The next issue presented is whether the death of the insured was caused by violent, external and accidental means, independently of all other causes and not directly or indirectly from disease or other bodily infirmity. In construing a policy containing essentially the same language, on a related state of facts, the Oregon Supreme Court in Todd v. Occidental Life Ins. Co. of California, 208 Or. 634, 295 P.2d 870, 303 P.2d 492 (1956), adopted the following rules to be employed in determining the coverage:

"(1) When an accident caused a diseased condition, which together with the accident resulted in the injury or death complained of, the accident alone is to be considered the cause of the injury or death.

"(2) When at the time of the accident the insured was suffering from some disease, but the disease had no causal connection with the injury or death resulting from the accident, the accident is to be considered as the sole cause.

"(3) When at the time of the accident there was an existing disease, which, co-operating with the accident, resulted in the injury or death, the accident cannot be considered as the sole cause or as the cause independent of all other causes."

█ After announcing these rules, the Oregon Court went on to say that pre-existing disease or bodily infirmity are eliminated as factors in determining liability, unless it can be said that the disease cooperates to create the ultimate condition. Consequently, if both the accidental injury and the existing disease are necessary to produce the disability or the death, no recovery may be had. It was Dr. Goldberg's opinion that death would not have occurred had it not been for the pre-existing heart condition, and Dr. Wilhelmi expressed the view that the insured had a minimal heart reserve for physical effort and emotional excitement and that both the pre-existing condition and the assault and battery were necessary to produce the death. Hence, the undisputed medical testimony compels a finding the beating alone was not sufficient to produce the death. Each doctor expressed this view even though each recognized the beating was very severe and that deceased was left in a semi-conscious condition. The overwhelming weight of the evidence supports a finding that at the time of the assault and battery and resulting death, there was an existing disease, which, cooperating with the battering resulted in the death and that both the accidental injury and the resulting disease were necessary to produce the death. The views expressed in *Todd* are repeated without criticism or modification in Fries v. John Hancock Mutual Life Ins. Co. of Boston, Mass., 227 Or. 139, 360 P.2d 774 (1961).

Plaintiff's contention that the assured had completely recovered from his July heart attack, at the time of the robbery, is unsupported by the record. His own doctor testified that although the decedent's health was considerably better at the time of the robbery, he was still on the recovery road, and was taking the same medicine prescribed for his heart condition as he took immediately after

the heart attack on July 20th. The decedent was still under the doctor's care, had a very enlarged heart, and could only work up to six hours per day. There is no evidence that decedent had recovered from his July heart attack, or that his condition was stationary, at the time of the robbery.

Cases such as Finley v. Business Men's Assurance Co., 236 Or. 328, 388 P.2d 459 (1964); La Barge v. United Ins. Co., 209 Or. 282, 303 P.2d 498, 306 P.2d 380 (1957), and Underwriters at Lloyd's, London, England v. Lyons, 248 F.2d 149 (9th Cir. 1957), are of no help to the plaintiff. In *Finley,* the language of the policy and the issues were significantly dissimilar to those before me. In *Finley* the issues were: (1) whether Finley's bodily injuries were effected by accidental means and (2) whether his death resulted directly or indirectly from disease. The policy did not "cover death resulting directly or indirectly from * * * disease." There the Oregon Court properly called attention to the fact that "there is no requirement that death must result solely from the injuries," but only that the injuries be effected solely through accidental means. Here, the language of the policy requires that "the death * * * result * * * independently of all other causes from violent, external, and accidental means. * * *" Dr. Wilhelmi testified that the *direct cause* of the insured's death was congestive heart failure, while both doctors said that the robbery incident and the heart disease combined to cause decedent's death.

There is little similarity between the facts in this case and those in *La Barge.* There, the insured's arthritic condition in no way affected his life prior to the injury under scrutiny. Never did the assured visit a physician in connection with his condition, nor did the condition inconvenience him in any way. In *La Barge,* there was a total lack of medical evidence that both the accidental injury and the existing disease were necessary to produce the disability.

In *Lyons,* the decedent had a normal heart for a man of his age at the time of the shotgun blast. The experts expressed an opinion that the heart condition which ultimately caused Lyons' death was caused by the shotgun blast. The facts in *Lyons* would fall within the first, rather than the third, rule as stated in *Todd.* In *Todd,* the heart disease was caused by the accident, while here the heart disease was a major factor in decedent's life long prior to the robbery.

The facts in this case fall within the third rule as stated in the *Todd* case and I so find. On the facts, plaintiff is not entitled to recover.

This opinion shall serve as my findings and conclusions.

It is so ordered.