Argued December 10, 1969, affirmed June 24, 1970

PERRY, *Appellant, v.* HARTFORD ACCIDENT
AND INDEMNITY COMPANY, *Respondent.*

471 P2d 785

*Raymond J. Conboy*, Portland, argued the cause for appellant. With him on the briefs were Keith Burns, and Pozzi, Wilson & Atchison, Portland.

*Edwin J. Peterson*, Portland, argued the cause for respondent. With him on the brief were Paul R. Duden, and Tooze, Powers, Kerr, Tooze and Peterson, Portland.

Before PERRY,* Chief Justice, and SLOAN, O'CONNELL, DENECKE and HOLMAN, Justices.

HOLMAN, J.

This is an action by the beneficiary of a deceased insured upon a group accident policy issued by the defendant insurance company. The plaintiff appealed from a judgment entered pursuant to a jury verdict in defendant's favor.

The policy provided benefits for death caused "* * * directly and independently of all other causes * * *" by accidental bodily injury. The policy also excluded loss from death "caused by or resulting from: * * * sickness or disease or medical or surgical treatment * * *."

---

* Perry, C.J., retired June 1, 1970.

On April 14, 1966, the insured was involved in a fairly minor automobile accident in which the automobile he was operating was struck at about the center of the right-hand side. At the time of the accident, insured was 44 years old and had extensive coronary artery disease with angina pectoris, which was considered to be in remission. He had previously suffered a myocardial infarction on October 30, 1962, and had been hospitalized until November 10, 1962. He returned to work January 14, 1963. Thereafter, in addition to his work, he attended graduate classes at Portland State College. He was able also to engage in physical sports to some extent. He was subject to periods of anginal pain; and in a deposition prior to his death, he testified as follows:

"Q. How many nitroglycerine were you taking during those years? [between October 20, 1962, and April 14, 1966]

"A. The last couple of years it had tapered off to where there were days at a time that I needed no nitroglycerine at all, although I always carried them with me at all times, and there were occasions when I might need them.

"Q. What kind of activity or stress was causing you to have chest pain during the last couple of years before this accident?

"A. You say before the accident?

"Q. Yes. What would cause any chest pain before the accident?

"A. I see. Walking too fast, maybe, or often times I was feeling so good I would run up steps."

After the accident, the insured's condition deteriorated and on November 17, 1966, he received an artery transplant and died in the hospital two days later from a coronary hemorrhage. It is conceded by

plaintiff that the insured died of a pre-existing heart condition which was fatally aggravated by the accident. On the other hand, the medical experts of both litigants agreed that the insured would not have died when he did had it not been for the accident.

Appellant assigns as error the failure of the trial court to give an instruction which contained the following language:

> "Sickness or disease is not to be considered as an 'other cause' of death unless the sickness or disease was of such severity, in and of itself, as to threaten imminent death in the absence of an accidental bodily injury";

and the giving of the following instruction:

> "Now, in respect to this matter of all other causes, you are instructed that sickness or disease may be considered as an 'other cause' of death, if such sickness or disease consists of an abnormal condition of such quality or degree that in its natural and probable development it may be expected to be a source of bodily infirmity, in which event such condition may be described as a sickness or disease.
>
> "If, however, such bodily condition is abnormal or unsound when tested by a standard of perfection, yet so remote in its potential mischief that it may not be expected to be a source of bodily infirmity, but at most a predisposing tendency, then such condition would not be a sickness or disease and would not be considered as an 'other cause.'
>
> "Now, ladies and gentlemen, if you find by a preponderance of the evidence that the said Gerald W. Perry suffered from a sickness or disease, as I have defined that term to you, immediately prior to the accident, and you further find that his death resulted from such pre-existing disease which combined or cooperated in a substantial way with the injury sustained by him in the accident, then his

death did not result from the accidental injury directly and independently of all other causes, and your verdict in such case must be for the defendant."

The plaintiff contends that the policy affords coverage so long as the disease from which the insured suffered, and which contributed to his death, was not severe enough by itself to threaten imminent death.

The plaintiff also contends that the court erred in failing to grant a directed verdict in plaintiff's favor because there was no evidence which indicated that at the time of the accident decedent's heart condition was of sufficient severity to threaten imminent death.

Although some of the arguments advanced by the parties would suggest that the disagreement in this case concerns the proper definition of "sickness or disease" as those words are used in the policy, we think that this is not the real issue. Decedent's heart condition was a disease. It is admitted that this condition contributed to decedent's death. The only genuine dispute must concern the extent to which a disease must contribute to death before it is a "cause" as contemplated by the policy.

The law of this state concerning interpretation of similar policy language is contained in three cases: *Finley v. Business Men's Assur. Co.*, 236 Or 328, 388 P2d 459 (1964); *LaBarge v. United Insurance Co.*, 209 Or 282, 303 P2d 498, 306 P2d 380 (1957); and *Todd v. Occidental Life Ins. Co.*, 208 Or 634, 295 P2d 870, 303 P2d 492 (1956).[1]

---

[1] The cases are collected in an extensive annotation, 84 ALR2d 176. The general problem is further discussed in the following authorities: Appleton, *Insurance Law and Practice* § 401 et seq; 10 *Couch on Insurance* § 41.74 (2d ed); Greider & Beadles, *Law*

In *Todd*, the plaintiff was injured when the car in which he was sitting was hit in the rear by another vehicle. At the time, he had dormant osteoarthritis. There was evidence from which the jury could find that the osteoarthritis was of normal development for a man of plaintiff's age. It was aggravated by the accident, resulting in disability. The policy covered disability caused by accidental injury directly and independently of all other causes. It excluded disability caused or contributed to by bodily or mental infirmity or any kind of sickness. The court held that a condition which was normal for a person's age was not a disease or infirmity as contemplated by the statute and, therefore, a jury question existed. The opinion assumed that osteoarthritis was a cause of the disability as contemplated by the policy. The court quoted with approval the following language of Mr. Justice Cardozo in *Silverstein v. Metropolitan Life Ins. Co.*, 254 NY 81, 84, 171 NE 914 (1930), as a proper interpretation of what physical condition was contemplated by a policy provision excluding coverage of loss contributed to by disease or other bodily or mental infirmity:

> " 'A distinction, then, is to be drawn between a morbid or abnormal condition of such quality or degree that in its natural and probable development it may be expected to be a source of mischief, in which event it may fairly be described as a disease or an infirmity, and a condition abnormal or unsound when tested by a standard of perfection, yet so remote in its potential mischief that common

*and the Life Insurance Contract* 213 (1968); Patterson, *Essentials of Insurance Law* 249, § 57 (2d ed 1957); *Vance on Insurance* 976, § 188 (3d ed 1951). Law Reviews: 21 U Chi L Rev 266 (1954); 30 Geo L J 682 (1942); 10 Hastings J 93 (1958); 1947 Ins L J 585; 19 Minn L Rev 244 (1935); 22 Wash L Rev 124 (1947).

speech would call it not disease or infirmity, but at most a predisposing tendency * * *.' " 208 Or 634 at 652.

It is obvious that part of the instruction which was given in the present case and to which objection was made was taken almost verbatim from this definition.

The court, in *Todd*, also included the following language which was dicta:

"In the case of *Hutchison v. Aetna Life Ins. Co.*, 182 Or 639, 648, 189 P2d 586, this court, in construing the coverage provided in an insurance policy under wording similar to that contained in the policy under consideration here, adopted from the case of *Penn v. Standard Life Insurance Co.*, 160 NC 399, 76 SE 262, 42 LRA NS 597, the following rules by which the facts of each case are measured in determining the policy coverage:

" '* * * * *.

" '(3) When at the time of the accident there was an existing disease, which, co-operating with the accident, resulted in the injury or death, the accident cannot be considered as the sole cause or as the cause independent of all other causes.'

"Under these rules, pre-existing disease or bodily infirmity are eliminated as factors in determining liability, unless it can be said that the disease cooperates to create the ultimate condition; that is, disability or death. In other words, if both the accidental injury and the existing disease are necessary to produce the disability or death, no recovery may be had." 208 Or 634 at 650-51.

In *LaBarge*, the policy insured against loss "resulting directly and independently of all other causes from accidental bodily injuries." While at work, the plaintiff lost his balance when he stepped on a block of wood and injured his shoulder as a result of being thrown against a moving piece of machinery. The in-

jury activated a dormant rheumatoid and osteoarthritic condition which disabled plaintiff.

The court decided that the arthritis was not an "other cause" of the disability because the condition was dormant at the time of the accident and the disability would not have occurred but for the accident.

> "* * * LaBarge could have kept on working indefinitely and would have done so but for the accident. It was the latter which marked the end of his career as a wage earner. It was the 'cause' of his misfortune. * * *" 209 Or 282 at 298.

This was decided despite the fact that had the arthritic condition not existed, the disability would not have resulted. The court also used the following language:

> "* * *, but unless the differences are great enough in and of themselves to threaten imminent disability of the kind actually resulting, they cannot later be said to have been *the cause* of disability." (Emphasis ours.) 209 Or 282 at 295.

While it is not clear, the opinion appears to be talking about "cause" in some way other than cause in fact. Otherwise, it would amount to pure sophistry. The opinion seems to say that, when the disability would not have occurred when it did but for the accident, there can be no other cause of disability as contemplated by the policy.

In *Finley*, the insured was accidentally exposed to sub-zero temperatures when his automobile became stalled during a storm. As a result of the exposure, he contracted bronchial pneumonia from which he died. He had a long history of disease, including asthma, emphysema, and chronic bronchitis. He previously had had part of one lung removed, was taking medication, and habitually carried oxygen for use when he had

trouble breathing. The pre-existing lung maladies played a part in bringing on his death.

The decision erroneously treated *Todd* and *La-Barge* as having been decided according to the same principles, and used the language of both cases to support a holding that "[t]he accidental exposure was the efficient predominating cause of insured's death." 236 Or 328 at 334. It held that his pre-existing condition, although it made him more susceptible to the effects of the accident, was not a cause of his death. "The lung disorders, though not hidden or dormant, were controlled by the insured and were not great enough in and of themselves to threaten imminent death." 236 Or at 335.

If the rule of *Finley* and *LaBarge* is construed to permit a recovery under such policy language when there is another substantial "cause in fact" of death or disability other than the accident, we do not believe we can abide the rule.

Almost all persons have some abnormality. They have tendencies, weaknesses, disease or other conditions which, to some extent, make them susceptible to disability and death from accident. A person seldom dies or is disabled from a completely isolated cause. A completely literal interpretation of the language of the present policy would result in practically no coverage. As a result, courts have usually held that the parties intended a broader coverage than a completely literal interpretation of the language would dictate. On the other hand, to interpret such language to contemplate coverage in all situations where disease contributed to death or a disability except in those situations in which the disease was of sufficient severity to threaten imminent death, would make a travesty of the language

used. Such a construction, in effect, would amount to a holding that it is impossible for an insurance company to exclude coverage in situations where disease substantially contributes to death or disability. We know of no public policy which dictates such a result. If the present language is not sufficient to at least limit defendant's coverage to this extent, it is difficult to imagine other or different language that would.

■ We have concluded that where pre-existing disease substantially contributed to death or disability, there is no coverage under the present policy language. This means that the question of coverage will be primarily one for the jury except in those instances where the court can say as a matter of law either that there was no evidence that disease substantially contributed to death or disability or that it has been shown conclusively that it did so contribute.

■ The definition of "sickness or disease" which was used in the instruction was substantially in conformance with *Todd*. However, it was not a model of simplicity and should be clarified before future use. We are also in agreement with the instruction given which was to the effect that if sickness or disease substantially contributed to decedent's death, plaintiff could not recover. Insofar as *LaBarge* and *Finley* may be considered inconsistent with the holding in this case, they are overruled.

■ Plaintiff also assigns as error the court's failure to direct a verdict in favor of plaintiff and against defendant. This contention cannot be valid in the face of the views we have just expressed.

Plaintiff also contends that insurance contracts must be construed in the light of the applicable law at the time of their execution, and that at the time of the

execution of the contract in question, the imminent death rule was in effect in this state, thus making this rule of construction part of the contract. As has been previously demonstrated, the court's prior decisions did not disclose a rule of sufficient consistency that it could be justifiably relied upon in a factual situation similar to the present one. As an illustration, the trial judge apparently did not believe they were controlling in the manner suggested by plaintiff.

The judgment of the trial court is affirmed.