Ronald DRAUGHON, Plaintiff and Appellant,

v.

CUNA MUTUAL INSURANCE SOCIETY, Defendant and Respondent.

No. 880240–CA.

Court of Appeals of Utah.

April 6, 1989.

---

Craig G. Adamson, Eric P. Lee, Salt Lake City, for plaintiff and appellant.

Lewis B. Quigley, Linda L.W. Roth, Salt Lake City, for defendant and respondent.

Before BENCH, GARFF and ORME, JJ.

## OPINION

ORME, Judge:

Plaintiff Ronald Draughon appeals from an order denying his motion for summary judgment and granting defendant CUNA Mutual Insurance Society's cross-motion for summary judgment. The trial court ruled that the credit life insurance policy CUNA issued to Draughon and his wife unambiguously excluded coverage for the loss Draughon claimed. We reverse and remand with instructions to enter judgment for Draughon.

## FACTS

In October of 1985, Draughon and his wife borrowed money from America First Credit Union to purchase an automobile. As part of this transaction, the Draughons bought a credit life insurance policy from CUNA. In relevant part, with our emphasis, the policy required CUNA to pay the remaining balance on the Draughons' automobile loan upon the death of either of them, but excluded coverage "if any *material contributing cause* of [death] was from sickness or injury which first became manifest prior to the time insurance coverage was otherwise effective...."

On the effective date of coverage, Mrs. Draughon suffered from a kidney disease which was treated by hemodialysis three times per week. Her physician testified at his deposition that with continuing treatments she was expected to live an otherwise normal life for another twenty to thirty years. Nonetheless, in November of 1985 Mrs. Draughon elected to undergo a kidney transplant operation. The operation itself was successful, but Mrs. Draughon developed acute pancreatitis as a consequence of an immunosuppressive steroid drug administered to help prevent rejection of the transplanted kidney.[1] The pancreatitis led to an internal abdominal infection

---

1. Her reaction to the drug was described in one doctor's affidavit as "an unusual complication of kidney transplant operations and immunosuppresive treatment."

and, in turn, Mrs. Draughon's fatal cardiac arrest on February 7, 1986.

Shortly after his wife's death, Draughon filed a claim under the policy and demanded that CUNA pay off the America First loan. CUNA denied Draughon's claim, asserting that his wife's pre-existing kidney disease was a "material contributing cause" of her death for which coverage was excluded. Draughon then filed this action. Both he and CUNA filed cross-motions for summary judgment, and CUNA's motion was granted. The trial court held that Mrs. Draughon's pre-existing kidney disease was a "material contributing cause" of her death for which coverage was unambiguously excluded as a matter of law. The court reasoned that "[i]f not for her kidney disease, Mrs. Draughon would not have elected to undergo a kidney transplant. If she had not had the kidney transplant, she would not have been given steroid drugs which caused acute pancreatitis, which ultimately caused her death."

On appeal, Draughon argues that the trial court erred by interpreting the phrase "material contributing cause" according to Oregon workers' compensation law.[2] Draughon contends that he, not CUNA, is entitled to judgment as a matter of law given the undisputed evidence before the trial court.

## OREGON CASES

No reported Utah decision has interpreted the phrase "material contributing cause" in the context of an insurance policy exclusion. Nor could we, the parties, or the trial court locate any such compelling cases from other jurisdictions. Noting this lack of authority, the trial court sought to construe the phrase consistent with Oregon decisions involving claims under Oregon's workers' compensation statutory scheme.

See Manous v. Argonaut Ins., 79 Or.App. 645, 719 P.2d 1318, 1320 (1986). See also Peterson v. Eugene F. Burrill Lumber, 294 Or. 537, 660 P.2d 1058, 1058 (1983); Grable v. Weyerhaeuser Co., 291 Or. 387, 631 P.2d 768, 771–76 (1981); Standley v. State Accident Ins. Fund, 8 Or.App. 429, 495 P.2d 283, 285 (1972).

The trial court's reliance on these cases is misplaced for two reasons. First, we fail to see the substantive relevance of Oregon's workers' compensation law to the interpretation of insurance contracts in Utah, even if the same phrase is involved in both instances. Second, these Oregon cases are not helpful here as they do not purport to define the phrase "material contributing cause," which is the task in this case. Rather, the Oregon courts utilize the phrase to further explain when an injury is deemed "arising out of" the injured person's employment for purposes of adjudicating entitlement to workers' compensation benefits. See, e.g., Olson v. State Indus. Accident Comm'n, 222 Or. 407, 352 P.2d 1096, 1100 (1960). As the trial court here correctly recognized, the Oregon courts' only attempt to define the phrase "material contributing cause" is to say that such an event "need not be the sole or principal cause...." Manous, 719 P.2d at 1320.

We conclude the Oregon cases are irrelevant to the present matter, and shed no light on the meaning of the phrase "material contributing cause" as used in the CUNA policy.

## SUMMARY JUDGMENT IN FAVOR OF CUNA

To sustain the judgment in favor of CUNA, we must conclude, as a matter of law, that Mrs. Draughon's kidney disease was a "material contributing cause" of her

2. Draughon argues that the phrase "material contributing cause" should be interpreted to mean "proximate cause." This argument is without merit. The phrase "proximate cause" has a well-established meaning as a legal concept. If CUNA had this concept in mind when drafting the exclusion, it would have employed the precise term "proximate cause" or some other phrase having a similarly recognizable meaning. It is obvious that by choosing the phrase "material contributing cause" CUNA intended to exclude coverage in a broader range of circumstances than would the phrase "proximate cause." See, e.g., Minyen v. American Home Assurance Co., 443 F.2d 788, 790 (10th Cir.1971); Nationwide Mut. Ins. Co. v. Anglin, 306 So.2d 147, 149 (Fla.Ct.App.1975).

death. From all that appears, the phrase "material contributing cause" is not defined in the policy,[3] and it must be interpreted by us. CUNA bears the burden to prove Draughon's claim falls within the policy exclusion. *See, e.g., LDS Hosp. v. Capitol Life Ins. Co.*, 94 Utah Adv.Rep. 16, 18, 765 P.2d 857 (1988); *Whitlock v. Old Am. Ins. Co.*, 21 Utah 2d 131, 442 P.2d 26, 27 (1968).

### Rules of Interpretation

▆▆▆▆ The interpretation of an integrated, unambiguous [4] contract is a question of law, and, accordingly, we give no particular deference to the trial court's interpretation. *See, e.g., Kimball v. Campbell*, 699 P.2d 714, 716 (Utah 1985); *Seashores Inc. v. Hancey*, 738 P.2d 645, 647 (Utah Ct.App. 1987). We construe the policy as we perceive it would be understood by the average, reasonable purchaser of insurance. *See, e.g., LDS Hosp.*, 94 Utah Adv.Rep. at 17, 765 P.2d 857 (quoting *Phil Schroeder, Inc. v. Royal Globe Ins. Co.*, 99 Wash.2d 65, 659 P.2d 509, 511 (1983)); *Clark v. Prudential Ins. Co.*, 204 Kan. 487, 464 P.2d 253, 257 (1970) ("If a policy of insurance is clear and unambiguous, the words are to be taken and understood in their plain, ordinary and popular sense, as an average or reasonable person with ordinary understanding would construe them, when used to express the purpose for which they were employed in the policy."); *Totten v. New York Life Ins. Co.*, 298 Or. 765, 696 P.2d 1082, 1086 (1985) ("We interpret the terms of an insurance policy according to what we perceive to be the understanding of the ordinary purchaser of insurance."). *See also* G. Couch, Couch on Insurance 2d §§ 15:17, :18 (1984). More particularly, an

insurer wishing to limit coverage through an exclusion must employ language clearly identifying the scope of the limitation. *See, e.g., National Union Fire Ins. Co. v. Reno's Executive Air, Inc.*, 100 Nev. 360, 682 P.2d 1380, 1382 (1984). Even if the policy employs technical terms, we do not construe it "through the magnifying eye of the technical lawyer," *Wheeler v. Employer's Mut. Casualty Co.*, 211 Kan. 100, 505 P.2d 768, 772 (1973), but rather as it would be understood by "one not trained in law or in the insurance business." *National Union Fire Ins.*, 682 P.2d at 1382. *See also American Nat'l Fire Ins. Co. v. Esquire Labs of Arizona*, 143 Ariz. 512, 694 P.2d 800, 808 (Ct.App.1984) ("an insurance policy must be read using the ordinary language of the average layman rather than by using technical medical, legal, insurance or statutory terms.").

### "Material Contributing Cause"

With the above rules of interpretation in mind, we note that the phrase "material contributing cause" as used in the CUNA policy is significant only as a legal concept of causation. The phrase is not employed to describe a person, place, or thing about which average purchasers of insurance can be expected to have much of an understanding. This compounds the insurer's burden to prove coverage is clearly excluded. For example, the meaning of the term "motor vehicle," when used in an insurance policy, may be somewhat unclear absent express definition. However, average persons have at least some understanding of the term's intended meaning because of its familiarity, and we construe it accordingly. *See Clark*, 464 P.2d at 257 ("the terms

---

**3.** Oddly, the actual policy does not appear in the record before us. Both parties were content to merely quote the key provision in their moving papers. Because seeing particular provisions in their overall context often aids interpretation, it is always preferable for courts to have access to the entire policy. *See, e.g., LDS Hosp. v. Capitol Life Ins. Co.*, 94 Utah Adv.Rep. 16, 17, 765 P.2d 857 (1988).

**4.** Draughon also argues that the phrase "material contributing cause" is inherently ambiguous because the term "material" creates a subjective

standard of causation. We disagree. As will be established, we find the phrase unambiguous because it has a plain meaning understood by "a person of ordinary intelligence and understanding, viewing the matter fairly and reasonably, in accordance with the usual and natural meaning of the words, and in the light of existing circumstances." *Auto Leasing Co. v. Central Mut. Ins. Co.*, 7 Utah 2d 336, 325 P.2d 264, 266 (1958). *See, e.g., LDS Hosp.*, 94 Utah Adv.Rep. at 17, 765 P.2d 857 (applying the above standard to an insurance policy exclusion).

'automobile,' 'motor vehicle' and 'vehicle' are of such common usage that an insured would understand the more limited aspects of the term 'automobile,' the broader facets of the term 'motor vehicle' and that the term 'vehicle' may include almost any means of [transportation]."); *Totten*, 696 P.2d at 1087 (the phrase "any aircraft" is commonly understood to include hang gliders). *Cf. Barber v. Farmers Ins. Exch.*, 751 P.2d 248, 252 (Utah Ct.App.1988) (dispute as to whether the term "motor vehicles" includes motorcycles). Unlike "motor vehicle," the technical concept expressed through the phrase "material contributing cause" is not easily understood by an average policy purchaser untrained in the law. CUNA might have employed phrases and terms which plainly and clearly explain how the concept excludes coverage. Instead, it chose to employ a technical phrase having no relevant, prior judicial construction, and without explaining its significance in plain, understandable language.[5]

■ As we see it, the average purchaser of insurance would understand the CUNA policy to exclude coverage where death is a natural, medically connected consequence of a pre-existing sickness or injury. The sickness or injury need not be the only cause of death, but there must be a medical link between the death and the disease. On the other hand, we think the average purchaser of insurance would not understand the policy to exclude coverage where a totally different illness caused by *medical treatment* for a pre-existing disease was the exclusive cause of death. If such an exclusion was intended, it is CUNA's responsibility to draft its policy to clearly convey this message to its insureds. Indeed, other insurers with such an intention have found a way to say so. *See, e.g., Schick v. Nationwide Ins. Co.*, 117 Ohio App. 238, 192 N.E.2d 93, 94 (1962) (coverage excluded where death occurs "as the result of or by the contribution of disease ... or medical or surgical treatment therefore or infection of any nature"); *Perry v. Hartford Accident and Indem. Co.*, 256 Or. 73, 471 P.2d 785, 786 (1970) (coverage excluded where death "caused by or resulting from ... sickness or disease or medical or surgical treatment"). We will not insert words into a policy under the guise of interpretation where the insurer could have easily avoided the problem by drafting its policy more carefully and precisely. *Cf. American Nat'l Fire Ins. Co.*, 694 P.2d at 808 (an exclusion for "hair transplant" processes cannot be construed to apply to "hair implant" processes because those terms, as commonly understood, refer to two distinctly different things).

Moreover, our interpretation of the policy is entirely consistent with insightful hypothetical situations offered by the trial court in support of its ruling, and revisited by CUNA on appeal. The trial court explained that, in its view, coverage under the subject policy would be available where an insured cancer patient is hit by a car and killed while walking to the hospital to receive medical treatment. On the other hand, coverage would be excluded where an AIDS patient dies after contracting pneumonia. We do not take exception to this dichotomy. However, we find the distinction appropriate mainly because the AIDS patient's death from pneumonia is a natural, medical consequence of the underlying disease, whereas the cancer patient's being struck by an automobile is medically unrelated to the cancer. This is true even though "but for" the cancer or the AIDS, the patient in each scenario would not have encountered the precise event ultimately causing death. In our view, Mrs. Draughon's being struck with pancreatitis is more like the cancer patient being struck by a car than an AIDS patient being struck by pneumonia.

Thus, CUNA is entitled to its summary judgment only if the undisputed evidence

---

**5.** A limited exception to the doctrine favoring construction of insurance policies in accordance with an average layperson's understanding may exist where a technical phrase having a judicially established meaning is used. *See* G. Couch, Couch on Insurance § 15:17 (1984) (a technical phrase may be interpreted according to prior judicial construction even if the insured is unaware of that construction).

establishes that Mrs. Draughon's kidney disease itself contributed naturally and medically to her death. As explained above, the requisite causal link is not established simply because "but for" her disease, she would not have had the transplant. Conversely, if the undisputed evidence establishes as a matter of law that the *medical treatment* Mrs. Draughon received caused her death, without contribution by her kidney disease, Draughon is entitled to judgment as a matter of law.

## CONCLUSION

 A review of the evidence before the trial court requires the entry of a judgment for Draughon. CUNA has simply failed to meet its burden to prove Draughon's claim falls within the exclusion. The only evidence before the trial court, in addition to noncontradictory deposition testimony, was the affidavit of Dr. Wayne Border, Mrs. Draughon's last attending physician, and the affidavit of Dr. Robert Bond, who reviewed Mrs. Draughon's medical records following her death. Dr. Border asserts in his affidavit that Mrs. Draughon's death was caused by pancreatitis, an unusual complication of the kidney transplant but medically unrelated to her kidney disease. Dr. Bond stated in his affidavit that "pancreatitis was a complication that in all probability occurred as a result of the treatment that was done for Sandra Draughon's primary, underlying renal disease."

 Thus, the expert medical testimony in this case is undisputed and clearly establishes that Mrs. Draughon's underlying kidney disease did not contribute to her death in any natural or medical sense.[6] It is equally clear that she died exclusively as a consequence of the medical treatment she had received three months previously.[7]

**6.** Ordinarily, the cause of death for purposes of entitlement to insurance coverage is a question for the jury. *See, e.g., Whitlock v. Old Am. Ins. Co.,* 21 Utah 2d 131, 442 P.2d 26, 27 (1968). However, where, as here, the facts are undisputed, summary disposition is appropriate. *See Nationwide Mut. Ins. Co. v. Anglin,* 306 So.2d 147, 149 (Fla.Ct.App.1975); *Perry v. Hartford Accident and Indem. Co.,* 256 Or. 73, 471 P.2d 785, 789 (1970).

Accordingly, the judgment in favor of CUNA is reversed and the case remanded with instructions to enter judgment in favor of Draughon.

DAVIDSON and BENCH, JJ., concur.

**7.** This is not to say that in every case a distinction between the causative effects of the disease and the treatment will be possible. In some situations, a disease and its treatment will be so inextricably linked as to make it impossible to distinguish between the two in determining a "material contributing cause" of death.